Filed 4/8/13

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | S192176 |
| Plaintiff and Respondent, | ) | |
| | ) | Ct.App. 2/4 B214397 |
| v. | ) | |
| | ) | |
| JOSE LEIVA, | ) | |
| | ) | Los Angeles County |
| Defendant and Appellant. | ) | Super. Ct. No. PA035556 |
| _____ | ) | |

At the relevant times, Penal Code former section 1203.2, subdivision (a) (as amended by Stats. 1989, Ch. 1319, § 1, p. 5305; (section 1203.2(a))[1], provided, in part, that the revocation of probation, "summary or otherwise, shall serve to toll the running of the probationary period." We granted review to resolve whether, once probation has been summarily revoked, this tolling provision permits a trial court to find a violation of probation and then reinstate or terminate probation based solely on conduct that occurred *after* the court-imposed period of probation had elapsed. For the reasons stated below, we hold that section 1203.2(a)'s tolling provision preserves the trial court's authority to adjudicate, in a subsequent formal probation violation hearing, whether the probationer violated probation during, but not after, the court-imposed probationary period.[2]

---

[1]     All further statutory references are to the Penal Code.

[2]     As part of the criminal justice realignment, the Legislature recently amended section 1203.2. The sentence regarding tolling now reads as follows: "The revocation, summary or otherwise, shall serve to toll the running of the period of supervision." (§ 1203.2(a), as amended by Stats. 2012, ch. 43, § 30; see Legis. Counsel's Dig., Sen.

BACKGROUND

In March 2000, defendant Jose Leiva was charged with breaking into several cars and stealing property from them.  Pursuant to a plea agreement, he pleaded no contest to three counts of burglary of a vehicle.  (§ 459.)  On April 11, 2000, the trial court suspended imposition of sentence and placed defendant on formal probation for a period of three years, which meant that probation would expire on April 11, 2003.  Included in the terms and conditions of probation were orders that defendant report to his probation officer within one business day of his release from custody and not reenter the country illegally if he left voluntarily or was deported.  Because defendant was not a legal resident of the United States, he was deported to El Salvador on the day he was released from jail.

On September 21, 2001, defendant failed to appear at a scheduled probation violation hearing based on an allegation that he had failed to report to the probation department.  The trial court summarily revoked defendant's probation based on the failure to report and issued a bench warrant for defendant's arrest.  It appears that neither the probation department nor the trial court knew that the reason defendant had failed to report or to appear in court was that he had been deported.

Seven years later, on November 10, 2008, defendant appeared in the trial court after his arrest on the outstanding warrant, following a traffic stop.  The trial court re-called the warrant and ordered that probation remain summarily revoked and that defendant be remanded into custody.  It calendared a formal probation violation hearing for February 13, 2009.

Before that date, the trial court received a supplemental probation report that indicated defendant had been unable to report for probation supervision because he was

Bill No. 1023 (2011-2012 Reg. Sess.).)  This change in the statutory language has no effect on the issue presented in this case.

2

not a legal resident of the United States and had been deported. The report included defendant's statement that he illegally had returned to the United States in February 2007.

At the February 13, 2009 formal violation hearing, the district attorney, after acknowledging that the trial court could not find defendant in violation of probation unless the violation was willful, conceded the People could not prove that defendant's failure to report in 2001 had been "willful." Defendant's counsel contended "probation must be terminated" because the court had no authority to reinstate defendant's probation as of 2007 when there was no evidence of a "willful failure to report," or any other probation violation, before "the termination of the natural period of probation."

The trial court found defendant had violated probation. It did not rely on the allegation that had led to the summary revocation on September 21, 2001, nor did it find any other violation of probation during the three-year probationary period imposed on April 11, 2000. Instead, the court found defendant violated his probation in 2007 when he failed to report to probation following his return to the United States. It relied on defendant's statement that he had been back in the United States since February 2007.[3] The court reinstated probation and ordered it extended until June 6, 2011. It additionally ordered that, if defendant voluntarily left the country again or was deported, he must report to his probation officer within 24 hours of his return to the United States and present proof that he was in the country legally. Defendant appealed the order reinstating and extending probation.

Defendant was deported again, this time in March 2009. On May 14, 2009, during the period of probation challenged on appeal in case No. B21437, the trial court calendared a violation hearing based on a supplemental probation report stating that defendant had not reported to his probation officer and had been deported to El Salvador.

---

[3] Although the People urged the trial court to find a violation of probation on the basis that defendant "was in [the] country illegally," the trial court chose not rely on defendant's "citizenship status since I think more would be required to establish that."

3

Defendant was not present, but the court considered his letter to the probation department explaining that he had been deported in March 2009, and that he was trying to contact his probation officer by telephone. At the June 9, 2009 hearing, after noting that defendant had been deported, the court summarily revoked defendant's probation based on his failure to report to his probation officer, and a bench warrant issued for his arrest.

Thereafter, defendant returned to California and was arrested on the outstanding warrant. On September 17, 2009, he appeared in the trial court. His counsel argued the court lacked the authority to reinstate or terminate probation because defendant's probationary term had expired three years after it began on April 11, 2000, and defendant had not willfully violated any condition of probation during those three years. Assuming its prior order reinstating and extending probation was valid pending appeal, the court ordered that probation remain summarily revoked and that defendant remain in custody.

On October 9, 2009, the trial court held a formal probation violation hearing and found that defendant had violated his probation "for re-entering the country illegally" in 2009. On November 9, 2009, the court ordered that probation remain revoked and sentenced defendant to two years in state prison based on one of the burglary counts to which defendant had pleaded no contest in 2000. Defendant filed a timely appeal from this order.

In each of his two appeals, defendant contended the trial court erred by finding a violation of probation based on conduct that had occurred after the expiration of the original court-imposed three-year probationary period. The Court of Appeal rendered a split decision. The two-justice majority upheld the trial court's orders. The dissenting justice agreed with defendant's position. We granted review.

DISCUSSION

Section 1203.3, subdivision (a), empowers the trial court "at any time during the term of probation to revoke, modify, or change its order of suspension of imposition or execution of sentence." This power includes the power to extend the probationary term.

4

(*Ex Parte Sizelove* (1910) 158 Cal. 493, 494.) Under section 1203.2(a), a court "may revoke and terminate such probation if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation officer or otherwise that the person has violated any of the conditions of his or her probation, has become abandoned to improper associates or a vicious life, or has subsequently committed other offenses, regardless whether he or she has been prosecuted for such offenses."

Under section 1203.2, the court is authorized to summarily revoke a defendant's probation " 'if the interests of justice so require and the court . . . has reason to believe from the report of the probation officer or otherwise' that grounds for revocation exist. (§ 1203.2, subd. (a).) Such summary revocation gives the court jurisdiction over and physical custody of the defendant and is proper if the defendant is accorded a subsequent formal hearing in conformance with due process. [Citation.] [¶] Therefore, after the summary revocation, the defendant is entitled to formal proceedings for probation revocation. The purpose of the formal proceedings is not to revoke probation, as the revocation has occurred as a matter of law; rather, the purpose is to give the defendant an opportunity to require the prosecution to prove the alleged violation occurred and justifies revocation. [Citation.]" (*People v. Clark* (1996) 51 Cal.App.4th 575, 581.)

"A change in circumstances is required before a court has jurisdiction to extend or otherwise modify probation. As we held in *In re Clark* (1959) 51 Cal.2d 838, 'An order modifying the terms of probation *based upon the same facts* as the original order granting probation is in excess of the jurisdiction of the court, for the reason that there is no factual basis to support it.' (*Id*. at p. 840, italics added.)" (*People v. Cookson* (1991) 54 Cal.3d 1091, 1095.)

When the trial court summarily revoked defendant's probation in 2001, section 1203.2(a) provided, in part, that "[t]he revocation, summary or otherwise, shall serve to toll the running of the probationary period."

In this consolidated appeal, defendant contends the trial court lacked the authority to reinstate and extend his probation as of 2007, after the expiration of the original three-year probationary period, because the noticed basis for revocation was not sustained and no other violation was proved to have occurred during the three-year probationary period. In turn, defendant contends that, because the February 13, 2009 order extending probation was invalid, the trial court lacked authority to impose a prison sentence in 2009 based on conduct that occurred later in 2009. The People contend the tolling provision of section 1203.2(a) gave the trial court jurisdiction to reinstate and later terminate probation in the 2009 hearings based solely on conduct that occurred after April 11, 2003, when the initially imposed period of probation would have ended.

Defendant's interpretation of the effect of section 1203.2(a)'s tolling provision was adopted in *People v. Tapia* (2001) 91 Cal.App.4th 738 (*Tapia*), which held that "a summary revocation of probation suspends the running of the probationary period and permits extension of the term of probation if, and only if, probation is reinstated based upon a violation that occurred during the unextended period of probation." (*Tapia*, *supra*, 91 Cal.App.4th at p. 741.) The court in *Tapia* reasoned that, under the tolling provision at issue in the present case, "the jurisdiction retained by the [trial] court is to decide *whether* there has been a violation during the period of probation and, if so, *whether* to reinstate or terminate probation." (*Id*. at p. 742.) The People's contrary view was adopted by the Court of Appeal in defendant's case. Disagreeing with *Tapia*, the majority concluded the trial court had the authority to first reinstate and later to terminate probation and impose a prison sentence based on defendant's conduct that occurred after the court-imposed probation would have expired. It reasoned that, "[s]ince defendant's probationary term had not expired because of the tolling provision, he was still bound by the conditions of probation." The dissenting justice, Justice Epstein, found the reasoning in *Tapia* persuasive. We granted defendant's petition for review to resolve this conflict.

6

1.  Statutory Construction

In construing section 1203.2(a)'s tolling provision to determine whether it gives the trial court authority to reinstate or terminate probation on the basis of conduct that occurred after expiration of the period of probation, we seek " ' "to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law." ' " (*City of Santa Monica v. Gonzalez* (2008) 43 Cal.4th 905, 919.)

"When interpreting statutes, we begin with the plain, commonsense meaning of the language used by the Legislature.  [Citation.]  If the language is unambiguous, the plain meaning controls." (*Voices of the Wetlands v. State Water Resources Control Bd*. (2011) 52 Cal.4th 499, 519.)  We consider first the words of the statute because " ' "the statutory language is generally the most reliable indicator of legislative intent." ' " (*People v. King* (2006) 38 Cal.4th 617, 622.)  "[W]henever possible, significance must be given to every word [in a statute] in pursuing the legislative purpose, and the court should avoid a construction that makes some words surplusage." (*Agnew v. State Bd. of Equalization* (1999) 21 Cal.4th 310, 330.)  However, section 7 cautions that "words and phrases must be construed according to the context . . . ." (§ 7, subd. (16.)  Accordingly, we have held that words in a statute " ' "should be construed in their statutory context" ' " (*People v. King*, *supra*, 38 Cal.4th at p. 622), and that "we may reject a literal construction that is contrary to the legislative intent apparent in the statute or that would lead to absurd results" (*Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 27), or "would result in absurd consequences that the Legislature could not have intended." (*In re J.W.* (2002) 29 Cal.4th 200, 210.)  Additionally, we adhere to "the precept 'that a court, when faced with an ambiguous statute that raises serious constitutional questions,

should endeavor to construe the statute in a manner which *avoids* any doubt concerning its validity.' " (*Young v. Haines* (1986) 41 Cal.3d 883, 898.)

Here, the parties dispute what constitutes the plain, commonsense meaning of the word "toll," and they dispute what the phrase "toll the running of the probationary period" means as used in section 1203.2(a). The Attorney General contends that, in the context of summary revocation, the word "toll" in the phrase "toll the running of the probationary period" is unambiguous and means "extend." She therefore claims that, under section 1203.2(a)'s tolling provision, the terms and conditions of probation in effect during the original probationary period continue indefinitely from the time of summary revocation until the defendant is brought before the court for a formal revocation hearing. Defendant disagrees that the word toll means "extend" and contends the statutory phrase is ambiguous in the context of summary revocation of probation because "the statute states only that a summary revocation serves to toll the running of the probationary period, leaving open the question of, for what purpose? Is it tolled for the purpose of preserving jurisdiction to adjudicate the basis for the summary revocation, or is it tolled for all possible purposes?" Defendant also argues that reading the tolling language of section 1203.2(a) as extending indefinitely the terms and conditions of probation until a defendant is brought to court for a formal probation revocation "could produce absurd consequences that the Legislature did not or could not have intended."

We first discuss the meaning of the word "toll." We conclude, as we have previously, that the most common understanding of the term "toll" in a legal context is " 'to stop the running of; to abate . . . .' (Black's Law Dict. (8th ed. 2004) p. 1535.)" (*Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665, 674.) Several dictionaries similarly define "toll" in the legal context as to "stop from running," "to abate," or to "suspend." (See, e.g., Webster's New World Law Dict. (2006) p. 257 ["stop from running"]; Garner's Dict. of Legal Usage (3d ed. 2011) p. 897 [" 'abate' " or " 'stop the running of' "]; Mellinkoff's Dict. of American Legal Usage (1992) p. 616

8

["suspend[]"]; West's Legal Thesaurus/Dictionary (1986) p. 750 ["suspend or stop temporarily"]; Ballentine's Law Dict. (3d ed. 1969) p. 1282 ["suspend or interrupt the running of"].) In the context of the tolling of a statute of limitations, we have noted that "tolling" is properly analogized to the stopping and restarting of a clock. (*Pearson Dental Supplies, Inc. v. Superior Court*, *supra*, 48 Cal.4th at pp. 674-675 [rejecting defendant's position that, when the time period in which to initiate contractual arbitration is statutorily tolled, what was being tolled was the "deadline" to request arbitration, i.e., that the limitations period continued to run]; see also *Woods v. Young* (1991) 53 Cal.3d 315, 326-327 & fn. 3 [construing a statute as "tolling," rather than "extend[ing]," the statute of limitations for filing a medical malpractice action].)

However, assuming the plain meaning of toll is to "abate" or "stop the running of," we are confronted by the fact that a literal application of "toll" to section 1203.2(a)'s tolling provision "would result in absurd consequences that the Legislature could not have intended." (*In re J.W.*, *supra*, 29 Cal.4th at p. 210.) Such a literal application would require the abatement or suspension of *compliance with the terms and conditions of probation* once a trial court ordered summary revocation; it would not simply extend the date on which those probationary conditions would expire. A defendant's duty of compliance with the terms and conditions of probation would "stop" or "abate" upon the trial court's entry of an order summarily revoking probation, and only start again after the formal hearing and decision on the alleged probation violation. For example, if "toll" is read to mean "abate," had the defendant in this case illegally returned to the United States at any time between the date of summary revocation and April 11, 2003, when his original probationary period would have ended, he would not have been in violation of his probation because the terms and conditions of his probation would have been suspended until he was brought to court. Such a literal application of "toll" in the context of section 1203.2(a) would give the defendant a "free pass" until the formal hearing and decision on the alleged probation violation, a decision which could be reached months or

9

years after the summary revocation, and it would free a defendant from continuing compliance just when there is reason to believe the defendant is not following the court's orders and needs supervision. We are convinced the Legislature could not have intended to automatically release a defendant from further compliance with the terms and conditions of probation when a trial court summarily revokes probation because it has found probable cause to believe the defendant is in violation of probation. We therefore agree with *People v. Lewis* (1992) 7 Cal.App.4th 1949, 1954 (*Lewis*), that there is "no 'window' during the probationary *term* which allows the probationer to be free from the terms and conditions originally imposed or later modified . . . ."[4]

We next consider the Attorney General's position that the word "toll" is "unambiguous" and means "extend." In light of the overwhelming weight of authority that defines "toll" in the legal context as to "abate" or "stop the running of," rather than "to extend," we reject the claim that "toll" unambiguously means to "extend." However, we do note that, although Garner's Dictionary of Legal Usage first states in large print that "[i]n the context of time limits—especially statutes of limitation—*toll* means 'to abate' or 'to stop the running of (the statutory period ),' " in smaller print the dictionary quotes a law review article that observes that " '[a] *tolling* rule can affect a statute of limitations in one of three ways—it can suspend the running of the limitations period; it can extend the limitations period; or it can renew or revive the limitations period.' Carli McNeill, *Seeing the Forest*, 85 Notre Dame L. Rev. 1231, 1250 (2010)." (Garner's Dict. of Legal Usage, *supra*, p. 897.) We remain convinced that the commonsense, plain meaning of "toll" in the context of legal time limits is "to abate" or "to stop the running of." However, assuming the word "toll" can mean "to extend," we nevertheless would

---

**4**     Accordingly, in the context of the case before us, in which defendant was deported before he could report to probation, if he illegally had returned to the country after summary revocation but before his probation would have expired in April 2003, the trial court could have relied on the illegal reentry and subsequent failure to report to the probation department as a basis for finding that he had violated his probation.

10

reject the Attorney General's reading of the tolling provision of section 1203.2(a), as allowing a trial court, through summary revocation, to extend indefinitely the conditions and terms of probation until a formal revocation proceeding can be held. Construing the word "toll" as "extend" in the context of section 1203.2(a) would be contrary to our statutes that authorize the courts to grant probation for a period not to exceed a specified time, three years in the case of misdemeanors, with certain exceptions (§ 1203a), or five years or the maximum possible term of sentence, whichever is longer, in the case of felonies, with certain exceptions (§ 1203.1). It is also contrary to language in section 1203.2 that gives the court authority, when an order setting aside the judgment or the revocation of probation, or both, is made after the expiration of the probationary period, to again place the person on probation for the same period of time "as it could have done immediately following conviction." (§ 1203.2, subd. (e).) Furthermore, the Attorney General's interpretation of the tolling provision in section 1203.2(a) raises serious due process concerns because such a reading of the statutory language would extend a defendant's probationary term indefinitely without notice or a hearing as to the propriety of such an increase. (See *Griffin v. Wisconsin* (1987) 483 U.S. 868, 874 [probationers have only conditional liberty dependent on the observance of restrictions].) In accord with rules of statutory construction that mandate us to construe statutory language in its statutory context (*People v. King*, *supra*, 38 Cal.4th at p. 622), and to endeavor to construe such language to avoid doubts concerning its constitutional validity (*Young v. Haines*, *supra*, 41 Cal.3d at p. 898), we do not adopt the Attorney General's position that the word toll means "extend" or her position that the tolling provision of section 1203.2(a) extends the conditions of probation after a summary revocation beyond the expiration of the court-imposed probationary period to the date of the formal probation revocation hearing, held in compliance with *Morrissey v. Brewer* (1972) 408 U.S. 471 (*Morrissey*) and *People v. Vickers* (1972) 8 Cal.3d 451 (*Vickers*).

Because a plain meaning construction of the word "toll" as "to abate" or "to extend" in the context of summary revocation and the tolling provision of section 1203.2(a) would result in absurd consequences and present constitutional concerns that the Legislature could not have intended, we are convinced that, while the statutory phrase "toll the running of the probationary period" may appear "unambiguous on its face," it has been "shown to have a latent ambiguity" (*Stanton v. Panish* (1980) 28 Cal.3d 107, 115 [language that appears unambiguous on its face may be shown to have a latent ambiguity when the plain meaning construction would lead to unreasonable results]; see *Quarterman v. Kefauver* (1997) 55 Cal.App.4th 1366, 1371).

We additionally note that "the split between the Courts of Appeal reflects uncertainty" (*People v. Indiana Lumbermens Mutual Ins. Co.* (2010) 49 Cal.4th 301, 308) over what the phrase "toll the running of the probationary period" means in the context of a summary revocation of probation. The split has left uncertain whether the provision permits a trial court to reinstate or terminate probation based solely on conduct that occurred after the original period of probation has expired or, alternatively, whether summary revocation pursuant to section 1203.2(a) is meant to preserve the court's authority to adjudicate whether the probationer violated probation during the court-specified period of probation. The term "toll" is not specifically defined in section 1203.2(a) or anywhere else in the Penal Code, and, in the context of a summary revocation, the precise meaning of the phrase "toll the running of the probationary period" cannot be gleaned from the words themselves. The Fourth District Court of Appeal, noting the ambiguity of the phrase as used in one of its earlier opinions, commented that "[i]n an opinion written in 1972, this court stated that 'revocation has the effect of terminating or tolling the running of the probationary period.' [Citation.] When the remark is read in context, however, it is apparent that we were referring only to the preservation of jurisdiction over the defendant." (*People v. DePaul* (1982) 137 Cal.App.3d 409, 413 (*DePaul*).)

When a term or phrase in a statute is unclear or contains a latent ambiguity, we may "look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1008; see *Stanton v. Panish*, *supra*, 28 Cal.3d at p. 115.) Because section 1203.2(a)'s tolling provision is ambiguous with regard to its effect in the context of a summary probation revocation, we consider the legislative history behind the language, the objectives of the statute, and relevant public policy considerations.

2. Legislative History

After reviewing the legislative history of the tolling provision in section 1203.2(a), we find no indication that the Legislature intended section 1203(a)'s tolling provision to subject a probationer to possible revocation for conduct that occurred after the conclusion of the court-imposed probationary period. Instead, it appears the Legislature intended Senate Bill No. 426 (1977-1978 Reg. Sess.) (Senate Bill 426), which amended former section 1203.2(a) by adding the tolling provision (Stats. 1977, ch. 358, §1, p. 1330), to address problems that can arise when a formal revocation hearing cannot be held during the court-imposed period of probation.

Before section 1203.2 was adopted in 1935 (former § 1203.2, added by Stats. 1935, ch. 604, § 3, p. 1709), it had been established that trial courts have the statutory authority to revoke or modify an order placing defendant on probation at any time *during* the term of probation on a showing that defendant had violated the terms and conditions of probation. As early as 1918, a Court of Appeal held that such statutory authority was limited to the period of probation, and that the trial court lost "jurisdiction or power to make an order revoking or modifying the order . . . admitting the defendant to probation after the probationary period has expired." (*People v. O'Donnell* (1918) 37 Cal.App. 192, 196-197.) As long as the order of revocation was entered during the probationary

13

period, the defendant could be arrested and brought before the court after the expiration of the probationary period. However, the trial court retained jurisdiction in such cases only to pronounce judgment by imposing sentence if imposition of sentence had been suspended or, alternatively, by ordering execution of the previously ordered but suspended sentence. (*People v. Williams* (1944) 24 Cal.2d 848, 851-854; former § 1203.2; former § 1203.3, added by Stats. 1935, ch. 604, § 4, p. 1709.) The fact that the trial court did not have authority under the statutes, as then written, to reinstate probation led to the call for legislative amendment of section 1203.2.

In 1957, the Legislature amended former section 1203.2 to add the following language: "If probation has been revoked either before or after judgment has been pronounced, the order revoking probation and the judgment, if any, may be set aside for good cause upon motion made before pronouncement of judgment or, if judgment has been pronounced, within 30 days after the court has notice that execution of the sentence has commenced. *If an order setting aside the judgment or the revocation of probation or both is made after the expiration of the probationary period, the court may again place the defendant on probation for such period and with such terms and conditions as it could have done immediately following conviction.*" (Former § 1203.2, italics added; as amended by Stats. 1957, ch. 331, § 1, p. 970.) This language has been substantively retained in section 1203.2, and is now found in subdivision (e) of the section. By authorizing the trial court to set aside its order revoking probation and to again place the defendant on probation after expiration of the probationary period, the 1957 amendment preserved the trial court's authority to hold a hearing after expiration of the probationary term for the purpose of considering a further grant of probation with regard to a violation that occurred during the probationary period.

We believe the primary purpose and effect of the 1977 amendment, which added the tolling language in section 1203.2(a), was to respond to the holdings in two appellate decisions in the mid-1970's, namely, *People v. Amsbary* (1975) 51 Cal.App.3d 75

14

(*Amsbary*), and *People v. Andre* (1974) 37 Cal.App.3d 516 (*Andre*). Those Court of Appeal decisions had held that a defendant's probationary term *expires* when the trial court does not validly revoke probation at a hearing complying with *Morrissey* and *Vickers* during the probationary term. Significantly, in terms of understanding the tolling provision added to former section 1203.2(a) in 1977, both cases held that, once probation expires, the trial court lacks jurisdiction to hold a new probation hearing complying with *Morrissey* and *Vickers*. In *Andre*, a probation revocation hearing held on May 29, 1973, did not comply with *Morrissey* and *Vicker*s. The appellate court held the action taken by the trial court at that hearing, revoking probation and sentencing the defendant to one year in the county jail, "was a nullity," and that, since the defendant's "probationary period expired on August 7, 1973, no new revocation hearing is permissible. Our reversal requires his immediate release from all restraint." (*Andre*, *supra*, at p. 524.) In *Amsbary*, probation was revoked during defendant's period of probation during a proceeding that violated the *Morrissey-Vickers* requirements. The trial court instituted a new proceeding to revoke probation. However, on appeal, the *Amsbary* court held that, "[b]y the rule of *Andre*, no new revocation hearing was permissible since the period of probation had expired. The hearing having commenced after the date probation expired, appellant must be released." (*Amsbary*, *supra*, at pp. 78-79.)

The Assembly Committee on Criminal Justice comments to Senate Bill 426 support the conclusion that the Legislature in 1977 was focused on *preserving the jurisdiction* of the trial court to hold formal probation violation hearings that met *Morrissey-Vickers* requirements after the period of probation had expired. The Legislature expressed concern that, without Senate Bill 426's tolling provision, jurisdiction to revoke probation would be lost when a probation revocation hearing had been conducted in an illegal manner and the trial court's decision revoking probation had been reversed on appeal. It additionally expressed concern that former section 1203.2 did not address the situation in which a trial summarily revoked probation and the defendant

15

did not appear in court on the violation. Senate Bill 426 was considered a "cleanup measure" (Enrolled Bill Report on Sen. Bill No. 426 (1977-1978 Reg. Sess.) Aug. 16, 1977 (Enrolled Bill Report)), designed to preserve a trial court's authority to hold a full hearing on an alleged probation violation that occurred during the court-imposed probationary period.

In its analysis of Senate Bill 426, the Assembly Committee on Criminal Justice stated that the "purpose of this bill is to allow the court to revoke probation after the court has probable cause to believe that the probationer has violated probation *and has not appeared at the hearing on the violation*." (Assem. Com. on Criminal Justice, analysis of Sen. Bill No. 426 (1977-1978 Reg. Sess.) as amended May 19, 1977, italics added.) The Committee then commented: "Should the probationary period be tolled upon revocation of probation? What does this mean? Upon revocation, the period is terminated. The proponents of this bill indicate that this 'tolling' language is necessary in cases where the revocation proceedings were conducted in an illegal manner and the decision is reversed upon appeal. Without the tolling language, the period may have expired and the court would be powerless to act in conducting a new probation revocation hearing. Should this tolling language be limited to cases in which the revocation decision is appealed?" (*Ibid.*)

In its comments to the proposed amendment to section 1203.2(a), the Assembly Committee on Criminal Justice explained that the due process "principles of *Morrissey* [*v. Brewer* (1972) 408 U.S. 471, 480] and [*People v.*] *Vickers* [(1972) 8 Cal.3d 451, 458] apply to revocation of probation hearings. The probationer must be afforded the opportunity to confront adverse witnesses and to present testimony. However, there may be a 'summary' revocation by the court with later allowance for the full hearing. Section 1203.2 deals with the revocation of probation procedure. However, it does not provide for the 'summary' revocation as is required in decisional law. Should this section be amended to provide more detail?" (Assem. Com. on Criminal Justice, analysis of Sen.

16

Bill No. 426 (1977-1978 Reg. Sess.) as amended May 19, 1977.)

Because the Legislature was concerned with both the jurisdictional problem that was created by the holdings in *Andre* and *Amsbary* and the situation in which a defendant does not return to court after summary revocation until after the expiration of probation, the tolling provision adopted by the Legislature ultimately did not contain language specifically limiting it to the appellate situation identified above. However, nothing in the language adopted suggests it was meant to address anything beyond the court's retention of jurisdiction to address violations of probation that had occurred *during* the probationary term. This is consistent with the description of the bill as "basically a cleanup measure" in the enrolled bill report submitted to the Governor. (Enrolled Bill Report, *supra*, Aug. 16, 1977.)

A review of the amendments to section 1203.2 from the time it was added to the Penal Code in 1935 until the 1977 amendment at issue here provides further support for our conclusion that the tolling provision was focused on preserving jurisdiction, and not on extending indefinitely the terms and conditions of probation until a formal probation violation hearing could be held. Those amendments consistently reflect the Legislature's concern with continuing and broadening the court's jurisdiction to resolve issues regarding a defendant's noncompliance, during the term of probation, with the terms and conditions of probation, as well as providing statutory procedures for the exercise of such jurisdiction. As discussed above, the Legislature in 1957 expanded the authority of the court to grant probation after expiration of the probationary term. (Former § 1203.2; Stats. 1957, ch. 331, § 1, p. 970.) In 1969, the Legislature added the option of a commitment to the Youth Authority upon revocation and termination of probation. (Former § 1203.2; Stats. 1969, ch. 785, § 1, p. 1602.) In 1970, the Legislature divided section 1203.2 into its five subdivisions and added procedures for a motion or petition to modify, revoke or terminate probation. (Former § 1203.2, subds. (a)-(e); Stats. 1970, ch. 333, § 1, pp. 729-730.) In 1976, the Legislature added a requirement for the service of

17

the motion or petition on the district attorney and a procedure for a probationer to agree to a modification or termination of a specific term of probation. (Former § 1203.2, subd. (b); Stats. 1976, ch. 287, § 1, pp. 596-597.) The amendments to section 1203.2 support our conclusion that the legislative intent in enacting the tolling provision in 1977 was directed at preserving the trial court's jurisdiction.

As noted above, the enrolled bill report submitted to the Governor by the Secretary of Legal Affairs stated that the bill was "basically a cleanup measure"; the report additionally noted that "[t]he State Public Defender has no objection." (Enrolled Bill Report, *supra*, Aug. 16, 1977.) As Justice Epstein appropriately commented in his dissenting opinion in the Court of Appeal, "If the tolling provision had the literal meaning now claimed for it by the majority, it would have been far more than a mere cleanup measure, and would most certainly have been opposed by the State Public Defender."

Nothing in the legislative history suggests the Legislature intended to permit the trial court to find a violation of probation based on conduct that occurred after the probationary period had expired. Instead, the legislative history reveals that the tolling provision was enacted to preserve the trial court's authority to hold a formal probation violation hearing at a time after probation would have expired with regard to a violation that was alleged to have occurred *during* the probationary period.

3. Statutory Objectives and Public Policy

Because the statutory language is unclear or contains a latent ambiguity, we "may also consider the " 'ostensible objects to be achieved' " by the statute as well as the relevant public policy considerations. (*In re M.M.* (2012) 54 Cal.4th 530, 536.) Those objectives and public policy considerations support our conclusion.

Shortly before the Legislature considered Senate Bill 426, a Court of Appeal rejected a defendant's contention that it was improper to summarily revoke probation ex parte on the last day before the probationary period expired to "preserve jurisdiction

18

when the probationary term would otherwise expire during the period of time necessary to hold *Morrissey* hearings" on violations alleged to have occurred during the probationary term. (*People v. Journey* (1976) 58 Cal.App.3d 24, 27.) In considering whether to adopt Senate Bill 426, the Legislature indicated its awareness that the due process rights set forth in *Morrissey* and *Vickers* apply to revocation of probation proceedings.

Therefore, in the context of a summary revocation, it is reasonable to conclude that the Legislature intended to reemphasize the following objectives by enacting the tolling provision. First, the provision would ensure that, once probation was summarily revoked, the prosecution would have a fair opportunity to prove that a defendant violated probation during the probationary period even when a formal probation violation hearing could not be held before probation expired. Second, the provision would ensure a defendant's due process right to a formal hearing in which to litigate the validity of an allegation that he violated the conditions of probation during the probationary period whenever such a formal hearing could be held.

In light of these ostensible objectives, we conclude summary revocation of probation preserves the trial court's authority to adjudicate a claim that the defendant violated a condition of probation during the probationary period. As noted, the purpose of the formal proceedings "is not to revoke probation, as the revocation has occurred as a matter of law; rather, the purpose is to give the defendant an opportunity to require the prosecution *to prove the alleged violation occurred and justifies revocation*." (*People v. Clark*, *supra*, 51 Cal.App.4th at p. 581, italics added.) We therefore agree with the court in *Tapia* that "the [authority] retained by the court is to decide *whether* there has been a violation during the period of probation and, if so, *whether* to reinstate or terminate probation." (*Tapia*, *supra*, 91 Cal.App.4th at pp. 741-742.)[5] Accordingly, a trial court

---

[5] In *People v. Wagner* (2009) 45 Cal.4th 1039, 1061, footnote 10, we disapproved language "to the contrary" in *Tapia*, *supra*, 91 Cal.App.4th 738, that could be

19

can find a violation of probation and then reinstate and extend the terms of probation "if, and only if, probation is reinstated based upon a violation that occurred during the unextended period of probation." (*Tapia*, *supra*, 91 Cal.App.4th at p. 741.)  This result fairly gives the defendant, if he prevails at the formal violation hearing, the benefit of the finding that there was no violation of probation during the probationary period.[6]

On the other hand, if the prosecution, at the formal violation hearing held after probation normally would have expired, is able to prove that the defendant did violate probation before the expiration of the probationary period, a new term of probation may be imposed by virtue of section 1203.2, subdivision (e), and section 1203.3.  This result fairly gives the prosecution, if it prevails at the formal violation hearing, the benefit of the finding that there was a violation of probation during the probationary period.

misconstrued as inconsistent with our discussion of the issues raised in that case. However, we did not disapprove *Tapia* in its entirety. The context in which footnote 10 appears is one in which the defendant was *not* subject to the conditions of probation twice for the number of days between summary revocation and the formal violation hearing because he was in prison during some of the probationary period.  The case involved a *formal* revocation based on a *proven probation violation*, namely, the commission of a new crime that resulted in the defendant being sentenced to state prison.  In such a situation, the conditions of probation, as well as the jurisdiction of the probationary court, abated or were tolled, because, as we noted in *Wagner,* " 'the trial court's probationary jurisdiction did not survive the commitment of [defendant] into the custody of the executive branch for incarceration.' " (*Wagner*, *supra*, 45 Cal.4th at p. 1061.)  Footnote 10 in *Wagner* was intended only to disapprove dicta in *Tapia*, *supra*, at the top of page 741, that the period of revocation always can be counted in calculating the expiration of probation.  *Tapia*'s analysis of section 1203.2(a)'s tolling language remains sound.

[6]      We note that here, although the trial court had ordered defendant to make restitution to his victims when it suspended imposition of sentence and imposed a three-year period of probation, the prosecution never alleged a probation violation based on defendant's willful failure to pay the full amount of restitution, nor did the prosecution offer any evidence that defendant had in fact willfully failed to pay the ordered restitution.  Had the prosecutor alleged such a violation, and had the trial court determined that defendant willfully failed to pay restitution during the probationary period and that defendant had had the ability to pay at that time, a violation of probation based on failure to pay restitution could have been found at the formal probation hearing held on February 13, 2009.  (§ 1203.2(a).)

Our construction of the statutory language does not unduly prejudice or benefit either the prosecution or the defendant. It is reinforced by consideration of the unreasonable consequences that would flow from a contrary interpretation, such as the following example provided by Justice Epstein: "Consider a defendant who is placed on three years' probation, which is summarily revoked during this time period for an alleged but mistaken claim of violation. Twenty years later, the defendant is stopped for a traffic violation, and a warrant check reveals the bench warrant from the summary revocation. The basis of the summary revocation is not sound, and there is no proof of any other probation violation during the three-year probationary period. But if the tolling language is read as the [People] would read it, the defendant's probationary period never ends" until a formal revocation hearing takes place. As noted above, such an interpretation of the statutory language is contrary to our statutes that authorize the courts to grant probation for a period not to exceed a specified time (§§ 1203a, 1203.1) and contrary to language in section 1203.2 that gives the court authority, when an order setting aside the judgment or the revocation of probation, or both, is made after the expiration of the probationary period, to again place the person on probation for the same period of time "as it could have done immediately following conviction." (§ 1203.2, subd. (e).) Summary revocation of probation cannot reasonably give the prosecution the power to rely on conduct that could occur decades after the expiration of a court-imposed probationary period, but before a formal revocation proceeding is held, as the sole basis for a violation. (*Tapia*, *supra*, 91 Cal.App.4th at p. 742.) Accordingly, we reject the interpretation of the provision adopted by the Court of Appeal majority, namely, that "[s]ince defendant's term had not expired because of the tolling provision, he was still bound by the conditions of probation" indefinitely, until a formal probation violation hearing could be held.

The Court of Appeal majority opinion expressed concern that, because a probationer who is deported when released from custody cannot be found to be in willful

violation of probation for failing to report to the probation office (*People v. Galvan* (2007) 155 Cal.App.4th 978, 984), "a probationer, such as defendant, who is deported, returns to this country illegally and is not caught until after the original term of probation expires, could potentially escape from ever having to comply with his or her probation conditions." The concern is unfounded. If a defendant whose probation has been summarily revoked has violated probation during the original probationary period, section 1203.2(a)'s tolling provision ensures that he may be subject to an additional period whenever a formal probation revocation hearing can be held. Here, for example, had the prosecution proved at the February 13, 2009 probation violation hearing that defendant illegally entered the United States between his deportation in 2000 and April 10, 2003, the trial court properly could have ordered defendant's probation reinstated and extended based on the allegation that he willfully failed to report to the probation department during the probationary period.

The Attorney General relies on *DePaul*, *supra*, 137 Cal.App.3d 409, and *Lewis*, *supra*, 7 Cal.App.4th 1949, to support her position that a defendant whose probation has been summarily revoked remains indefinitely bound to the conditions of probation until a formal probation violation hearing is held. Because we conclude that the Legislature intended the tolling provision in section 1203.2(a) to preserve the trial court's jurisdiction to determine whether a defendant violated probation during the court-imposed period of probation, we disapprove *People v. DePaul*, *supra*, 137 Cal.App.4th 409, to the extent it suggests a probation violation can be based solely on conduct that occurs after the expiration of a court-imposed period of probation.[7]

---

[7] We also disapprove the conclusion of the court in *People v. DePaul*, *supra*, 137 Cal.App.3d at page 415, that "if probation is reinstated the period of revocation cannot be counted in calculating the expiration date." As discussed above, our conclusion is fair to the prosecution because, upon proof that a defendant did violate probation before the expiration of the probationary period, probation may be reinstated or a new term may be granted. (§§ 1203.2, subd. (e), 1203.3.)

22

"In the end, a court must adopt the construction most consistent with the apparent legislative intent and most likely to promote rather than defeat the legislative purpose and to avoid absurd consequences." (*In re J.W.*, *supra*, 29 Cal.4th at p. 213.) Accordingly, here, we conclude summary revocation operates in conjunction with 1203.2(a)'s tolling provision to allow the trial court to retain the authority to adjudicate a claim that the defendant violated a term of probation *during* the court-imposed period of probation. "If the Legislature disagrees with our construction" of Penal Code section 1203.2(a), "we assume it will act to clarify its intent." (*In re J.W.*, *supra*, 29 Cal.4th at p. 213.)

## CONCLUSION

The judgments of the Court of Appeal are reversed, and the matters are remanded to that court for further proceedings consistent with our opinion.

CHIN, J.

WE CONCUR:

CANTIL-SAKAUYE, C. J.
KENNARD, J.
WERDEGAR, J.
CORRIGAN, J.
LIU, J.

23

**CONCURRING OPINION BY BAXTER, J.**

Penal Code former section 1203.2, subdivision (a) (§ 1203.2(a)) provided that a summary revocation of probation "shall serve to toll the running of the probationary period." The majority holds that this provision, not substantively changed under current law, merely preserved the court's authority to adjudicate, in a hearing under *Morrissey v. Brewer* (1972) 408 U.S. 471 and *People v. Vickers* (1972) 8 Cal.3d 451 (*Morrissey/Vickers* hearing) held after the original imposed term of probation, whether a summary revocation entered during the original probationary term was validly based on an actual violation of probation committed during that time. Thus, the majority concludes, the tolling provision does not permit a court to determine, in a *Morrissey/Vickers* hearing following a summary revocation, that the probationer committed a violation of probation *after* the originally imposed period of probation had lapsed. The majority applies this rule to a probationer who (1) was deported in 2001, one year after he received a three-year probationary term and served a county jail term as a condition thereof; (2) had his probation summarily revoked in 2001 for failure, while deported, to report to his probation officer; (3) again failed to so report upon his illegal reentry into the United States in 2007; and (4) was adjudicated in a 2009 *Morrissey/Vickers* hearing *not* to be in willful violation for the 2001 failure. Under these circumstances, the majority determines, the court could not invoke the 2007 failure as grounds to reinstate and extend the probationary period.

1

I am willing to agree, for the reasons expressed in detail by the majority, that this is the current meaning and import of the tolling provision in section 1203.2(a). But I believe the majority's interpretation, as applied to cases like this one, exposes a significant issue of public policy which the Legislature may wish to address.

Of primary concern is the fact that a summary revocation left unresolved by the probationer's absence interferes with the *supervised* form of release that probation is intended to represent. (See, e.g., §§ 1202.8, subd. (a), 1203, subd. (a).) Imposition of probation for a specified period contemplates that the probationer will be subject to supervision by the court and probation authorities for that *entire amount or length of time*, even if he or she commits *no* violations in the interim. Supervision for the entire probationary period, as agreed between the probationer and the court, is a fundamental prerequisite to the successful and lawful completion of a grant of *supervised* probation.

But when, after a summary revocation, the probationer is deported or is otherwise beyond the supervision of the court and the probation department, the supervision contemplated by the original grant of probation cannot occur. During the probationer's absence, the court cannot hold a *Morrissey/Vickers* hearing to determine whether the summary revocation should be confirmed, or whether probation should be reinstated on the same or modified conditions. By the same token, the court and the probation authorities have no practical ability to monitor the probationer's behavior.

Under these circumstances, the probationer should not be absolved of a portion of the originally contemplated *length* of supervised release simply because his or her absence extended beyond the originally imposed *calendar period* of probation. On the contrary, whenever the court regains physical custody over the probationer, the period of his or her absence should not necessarily be counted in determining whether the probationary time of *supervised* release has lapsed. If it has not, the court should retain full authority, in the interests of justice, and within the limits of the relevant statutory provisions, to determine what probationary consequences should flow from conduct the

2

probationer has committed in the interim.  The current version of section 1203.2(a) should expressly so recognize.

**BAXTER, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Leiva

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 193 Cal.App.4th 114
**Rehearing Granted**

_____

**Opinion No.** S192176
**Date Filed:** April 8, 2013

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Barbara M. Scheper

_____

**Counsel:**

Eric R. Larson, under appointment by the Supreme Court, and  Meredith J. Watts, under appointment by the Court of Appeal, for Defendant and Appellant.

Michael P. Judge, Public Defender, Albert J. Menaster and Karen Nash, Deputy Public Defenders, for the Public Defender of Los Angeles County as Amicus Curiae for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka and Lance E. Winters, Assistant Attorneys General, Stephanie A. Miyoshi, Kenneth C. Byrne, David C. Cook and Idan Ivri, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Eric R. Larson
330 J Street, #609
San Diego, CA 92101
(619) 238-5575

Idan Ivri
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
(213) 897-4991