Filed 7/6/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br><br>RICKEY JACKSON,<br><br>        Defendant and Appellant. | A164649<br><br>(San Mateo County<br>Super. Ct. No. 16SF014002A) |

Defendant Rickey Jackson appeals after the trial court found he violated his probation, terminated the probation unsuccessfully, and sentenced him to time served. Jackson does not contest in this appeal that he engaged in the alleged misconduct at issue. Instead, he contends that the trial court had no jurisdiction to treat that misconduct as a violation of probation because, due to a retroactive change in the law, his probationary term had expired before the misconduct occurred. We agree with Jackson.

The enactment at issue, Assembly Bill No. 1950, codified at Penal Code[1] section 1203.1 and enacted effective January 1, 2021, reduced the maximum probationary term for most felonies from five years to two years. We must decide whether the bill applies retroactively, in cases not yet final when the bill took effect, to prevent a court from finding a violation of probation based on misconduct that occurred more than two years after a defendant's probationary term began, but before the bill's effective date.

---

[1] All further statutory references are to the Penal Code.

Appellate courts disagree about this issue. Jackson urges this court to follow the holding in *People v. Canedos* (2022) 77 Cal.App.5th 469, review granted June 29, 2022, S274244 (*Canedos*), a decision by the Second Appellate District, which held that Assembly Bill No. 1950 applied retroactively to bar a court from considering an alleged probation violation that occurred more than two years after the court had imposed a four-year term of probation. The People, on the other hand, urge this court to follow a contrary decision by our colleagues in Division Three, *People v. Faial* (2022) 75 Cal.App.5th 738, review granted May 18, 2022, S273840 (*Faial*), that Assembly Bill No. 1950 does not apply retroactively in these circumstances. The Supreme Court has accepted both cases for review. As noted above, we agree with Jackson that *Canedos* reaches the correct conclusion.

## BACKGROUND

The facts are not in dispute. In January 2017, Jackson was convicted through a no contest plea of felony second-degree burglary and was sentenced to five years of probation, including less than a year in jail. In July 2020, he was charged with having committed probation violations in July and October 2019 (i.e., more than two years after his probationary term began). In August 2020, the court summarily revoked probation pending a formal hearing.

In January 2021, Assembly Bill No. 1950 took effect. (Assem. Bill No. 1950 (2019–2020 Reg. Sess.) Stats. 2020, ch. 328, § 1.) The bill amended sections 1203a and 1203.1 and decreased the maximum period of felony probation (with certain exceptions not relevant here) to no more than two years. (Legis. Counsel's Dig., Assem. Bill No. 1950 (2019–2020 Reg. Sess.).) The Legislature did not amend sections 1203.2 and 1203.3, the statutes relating to probation violations.

In August 2021, Jackson moved to terminate probation, contending that, because the bill had retroactively limited his probationary term to two years, the term had expired in January 2019. The trial court denied the motion, and this court summarily denied a petition for a writ of prohibition.

In February 2022, the trial court held a hearing on the alleged probation violations that had occurred in July and October 2019 and sustained two of them, one of which involved a violation of section 211 (robbery) for which Jackson had been charged and convicted in Alameda County. While declining to impose additional jail time, the court revoked and terminated Jackson's probation as unsuccessful. He timely filed an appeal.[2]

## DISCUSSION

As set forth above, Jackson committed the misconduct at issue, and the court summarily revoked probation, *after* the termination of the two-year probation term as modified by Assembly Bill No. 1950, but *before* the statute's effective date. In determining whether Assembly Bill No. 1950 applies retroactively in such a case, we start with the familiar goal of statutory construction, which is to determine legislative intent. (*People v. Brown* (2012) 54 Cal.4th 314, 319 (*Brown*).) In general, when the text of a statute has not made the Legislature's intent clear, we apply its declaration that: "No part of [the Penal Code] is retroactive, unless expressly so declared." (§ 3; *Brown*, *supra*, at pp. 319–320.) However, that general rule is subject to an exception established by *In re Estrada* (1965) 63 Cal.2d 740, disapproved on another ground as stated in *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 222, 230) (*Estrada*): "When new

---

[2] As noted, Jackson challenges only the court's refusal to find that his probationary term expired in January 2019, before the violations at issue; he does not challenge the sufficiency of the evidence of those violations.

3

legislation reduces the punishment for an offense, we presume that the legislation applies to all cases not yet final as of the legislation's effective date." (*People v. Esquivel* (2021) 11 Cal.5th 671, 673 (*Esquivel*), citing *Estrada*.) "*Estrada* presumed that our Legislature intends for ameliorative enactments to apply as broadly as is constitutionally permissible." (*Id.* at p. 677.)

"Appellate courts are so far unanimous in holding that Assembly Bill No. 1950 applies retroactively to defendants who were serving a term of probation when the legislation became effective on January 1, 2021; in such cases, the courts have acted to reduce the length of their probation terms." (*Faial, supra,* 75 Cal.App.5th at p. 743; *Canedos, supra,* 77 Cal.App.5th at pp. 475–476.) The Attorney General does not dispute that proposition. Appellate courts have reached different conclusions, however, as to whether the statute applies retroactively when, as here, the defendant has engaged in misconduct that would constitute a probation violation under the original sentence, and that misconduct occurred before the bill's effective date, but more than two years after the defendant's sentencing. (See, e.g., *Canedos,* at p. 469; *Faial,* at p. 738.) As noted, the question is now before our Supreme Court. (*Faial, supra,* 75 Cal.App.5th 738, review granted May 18, 2022, S273840; *Canedos, supra,* 77 Cal.App.5th 469, review granted June 29, 2022, S274244.)

In short, we agree with *Canedos* that the *Estrada* presumption of retroactivity applies to this case, because neither the trial court's revocation of probation nor Jackson's original conviction was final under *Estrada* when Assembly Bill No. 1950 took effect on January 1, 2021. (*Canedos, supra,* 77 Cal.App.5th at pp. 473–474.) Nothing in the statutory text or legislative history mandates an exception to the " 'presumed legislative intent' that an ameliorative criminal statute applies retroactively to all defendants whose

4

convictions were not yet final when the law became effective." (*Ibid.*, citing *Esquivel*, *supra*, 11 Cal.5th at p. 680.) Based upon this presumption that the bill retroactively caused Jackson's probationary term to expire in January 2019, his conduct after that time could not constitute a violation of his probation. The Attorney General does not identify any statutory text or indicia of intent that clearly *negate* the *Estrada* presumption. (See, e.g., *People v. Frahs* (2020) 9 Cal.5th 618, 631–632 (*Frahs*) [absent express savings clause limiting statute to prospective application, question is "whether the Legislature 'clearly signal[ed] its intent' to overcome the *Estrada* inference"].)

The starting point of the analysis, briefly sketched above, of how Assembly Bill No. 1950 applies to a case like this is, as *Canedos* explains and the Attorney General concedes, the central holding of *Esquivel*, *supra*, 11 Cal.5th 671, namely, that an order revoking probation does not render a case final for purposes of *Estrada*. (*Canedos*, *supra*, 77 Cal.App.5th at p. 476.) Jackson's case is thus nonfinal for those purposes despite the August 2020 order summarily revoking his probation, which preceded the effective date of Assembly Bill No. 1950, and despite the February 2022 order formally revoking that probation. (*Canedos*, *supra*, 77 Cal.App.5th at p. 477.) The Attorney General also does not dispute that Assembly Bill No. 1950 reduces punishment in a way triggering the *Estrada* presumption of retroactive application. (See *People v. Sims* (2021) 59 Cal.App.5th 943, 958–959 (*Sims*) [rejecting argument that probation is not punishment].)

The Attorney General's main argument for nonetheless affirming the challenged order is that the retroactive sweep of Assembly Bill No. 1950 does not encompass the court's findings of probation violations, and its orders revoking and terminating probation, because the text of the bill "does not

target probation violations and therefore cannot be applied retroactively to invalidate probation revocations based upon those violations." For that proposition, the Attorney General relies on the decisions of our colleagues in Division Three in *Faial, supra,* 75 Cal.App.5th 738 and *Kuhnel v. Superior Court* (2022) 75 Cal.App.5th 726, review granted June 1, 2022, S274000 (*Kuhnel*). As discussed below, we agree with the *Canedos* court that *Kuhnel* is distinguishable, and we respectfully disagree with the conclusion in *Faial*.

It is true that, as the *Faial* court observed and the Attorney General now emphasizes, Assembly Bill No. 1950 did not "undertake to amend section 1203.2 or section 1203.3—the statutes that confer and address [a trial court's] authority" to revoke and terminate probation when a defendant has violated its terms. (*Faial, supra,* 75 Cal.App.5th at p. 744.) But no amendment of these sections was necessary. The Legislature amended the code sections governing the maximum length of a period of probation, e.g., section 1203.1. Those amendments apply retroactively to limit all probation terms in not-yet-final cases like this one. Accordingly, the conclusion that conduct occurring after the end of the two-year probationary term cannot constitute a violation of that probation does not involve any change in the operation of the preexisting rules governing probation violations and revocations, in a way that would have required some corollary amendment to sections 1203.2 or 1203.3. The only retroactive alteration is to the length of a defendant's probationary term—not to the rules governing when misconduct must have occurred to constitute a violation of probation.

The *Kuhnel* court quoted section 1203.3 as stating—in a way unmodified by Assembly Bill No. 1950—that a court "has the authority at any time *during the term of probation* to revoke, modify, or change its order of suspension of imposition or execution of sentence." (§ 1203.3, subd. (a);

6

*Kuhnel, supra,* 75 Cal.App.5th at p. 733.) Accordingly, " ' "[a]n order revoking probation must be made within the period of time circumscribed in the order of probation. Otherwise, the probationary period terminates automatically on the last day." ' " (*Kuhnel,* at pp. 733–734.) Because a court has jurisdiction to issue a revocation order only during the probationary period, it follows a fortiori that such an order must rest on *conduct* occurring within that period. (See *People v. Leiva* (2013) 56 Cal.4th 498, 502 (*Leiva*).)[3]

Here, Assembly Bill No. 1950 retroactively modified Jackson's probationary period so that it ended in January 2019. The conclusion that his conduct in July or October 2019 cannot amount to a violation of that probation thus involves a simple application of the unmodified sections 1203.2 and 1203.3 to the modified probation term. There was no need for the Legislature to modify sections 1203.2 or 1203.3 to generate the result mandated by *Estrada* in this case—nor any reason to expect the Legislature to have noted the settled rule, which Assembly Bill No. 1950 in no way

---

[3] *Leiva* analyzed the provision in section 1203.2 stating that a summary revocation of probation "shall serve to toll the running" of the probationary period. (56 Cal.4th at p. 502.) The question was whether, if a court summarily revokes probation during the probationary term but does not hold a formal hearing on the alleged violations until after the term ends, may the court order probation revoked based solely on conduct that occurred *after* the end of the probationary term, or must any revocation be based on conduct that occurred *during* the probationary term? (*Id.* at pp. 502, 505–506.) *Leiva* held that the tolling provision "preserves the trial court's authority to adjudicate, in a subsequent formal probation violation hearing, whether the probationer violated probation during, but not after, the court-imposed probationary period." (*Id.* at p. 502.) The court had no occasion to state in general that a revocation of probation must rest on conduct during rather than after the term of probation, but its analysis unmistakably presumes that general principle, and proceeds to address whether the "tolling" provision of section 1203.2 creates an exception to that principle.

modified, that only conduct occurring during a probationary term can constitute a violation of that probation.

Kuhnel is not inconsistent with this conclusion, for Assembly Bill No. 1950 retroactively limited the defendant's misdemeanor probationary term in that case to one year, yet she had committed a violation 11 months into the term—i.e., within the period as limited by the new law. (*Kuhnel, supra*, 75 Cal.App.5th at pp. 729–730.) Her claim was that, because the trial court had not issued its order summarily revoking her probation until 13 months into the term, it had lost jurisdiction to find a violation. (*Id.* at p. 729.) Division Three held that, since she had committed the violation before Assembly Bill No. 1950 had even been introduced, "no one had any reason to expedite summary revocation of probation to ensure the court's continued jurisdiction." (*Id.* at pp. 735–736.) In *Canedos*—where, as here, the purported violation occurred *after* the end of the modified probationary term—the court distinguished *Kuhnel* on that basis, while endorsing its analysis of the facts before it. (*Canedos, supra*, 77 Cal.App.5th at p. 480, quoting *Kuhnel, supra*, 75 Cal.App.5th at p. 736.) We agree with *Kuhnel* and with *Canedos*'s reading of it. But we must disagree with *Faial*, for we do not believe that the Legislature's failure to amend the provisions governing probation violations and revocations means that the amendment can have no downstream effects on such matters by virtue of the ordinary operation of those provisions.

The Attorney General also argues that "invalidating" probation violations or revocations that occurred before Assembly Bill No. 1950 took effect will not further the bill's "legislative aims." This argument fails for two independent reasons. The first is that it misapprehends *Estrada*, which creates a presumption of retroactivity that can be overcome only by clear

8

signals of a contrary legislative intent. (*Frahs, supra*, 9 Cal.5th at p. 628.) To trigger that presumption, a defendant in Jackson's position need not demonstrate that retroactivity will further an ameliorative statute's "legislative aims," but only that the statute is ameliorative—which is not in dispute here. If so, *Estrada* dictates retroactive application unless the Legislature has clearly signaled otherwise; there is no need to show that retroactive application will affirmatively further any "legislative aims" unique to that statute. That said, the second reason the argument fails is that the legislative history of Assembly Bill No. 1950 does in fact show that treating Jackson's probationary term as retroactively limited to two years for all purposes, rather than creating an exception for purposes of violation and revocation, will further one of the bill's central aims—avoiding costly reincarcerations due to violations of needlessly lengthy probation terms.

In *People v. Quinn* (2021) 59 Cal.App.5th 874 (*Quinn*), this court summarized that history: "The legislative history reflects that the Legislature's concern was that lengthy probationary periods do not serve a rehabilitative function and unfairly lead to reincarceration for technical violations. The author's statement with respect to the bill provides: ' "California's adult supervised probation population is around 548,000—the largest of any state in the nation, more than twice the size of the state's prison population, almost four times larger than its jail population and about six times larger than its parole population. [¶] A 2018 . . . study [citation] found that a large portion of people violate probation and end up incarcerated as a result. The study revealed that 20 percent of prison admissions in California are the result of supervised probation violations, accounting for the estimated $2 billion spent annually by the state to incarcerate people for supervision violations. Eight percent of people incarcerated in a California

9

prison are behind bars for supervised probation violations. Most violations are 'technical' and minor in nature, such as missing a drug rehab appointment or socializing with a friend who has a criminal record. [¶] Probation—originally meant to reduce recidivism—has instead become a pipeline for re-entry into the carceral system. [¶] Research [citation] . . . shows that probation services, such as mental healthcare and addiction treatment, are most effective during the first 18 months of supervision. Research also indicates that providing increased supervision and services earlier reduces an individual's likelihood to recidivate. A shorter term of probation, allowing for an increased emphasis on services, should lead to improved outcomes for both people on misdemeanor and felony probation while reducing the number of people on probation returning to incarceration." ' " (*Quinn*, *supra*, 59 Cal.App.5th at pp. 879–880.)

Other courts have agreed with *Quinn*'s distillation of the bill's aims, while citing further passages in its legislative history to similar effect. (See, e.g., *People v. Shelly* (2022) 81 Cal.App.5th 181, 194, review granted Sep. 21, 2022, S276031 [quoting history showing "the Legislature's concern that ' "[p]robation—originally meant to reduce recidivism—has instead become a pipeline for re-entry into the carceral system" ' " and adding, "we agree with those courts that have found Assembly Bill No. 1950 was enacted, in large part, to 'ensure that many probationers avoid imprisonment' "]; *Sims*, *supra,* 59 Cal.App.5th at p. 961 [noting that legislative history reflects "strong concerns that probationers . . . face unwarranted risks of incarceration due to the lengths of their probation terms" and quoting statements, e.g., that "defendants 'on probation for extended periods of time are less likely to be successful because even minor or technical violations of the law may result in a violation of probation' "].)

A central purpose of the bill was thus to help probationers avoid reimprisonment, especially for technical violations, and to prevent probation from serving as a pipeline for reentry to prison. We further that aim by holding that the bill's retroactive application to existing probationary terms bars a court from treating conduct that occurred after the end of a modified term as a violation warranting revocation and possible reincarceration.

The Attorney General's discussion of the legislative history does not refute that conclusion. He asserts that "[t]he legislative analyses used in the drafting of AB 1950 focused on the increased effectiveness of and financial benefits to other supportive services that would result from having shorter probation sentences." Those goals in no way exclude or negate the above-noted goal of minimizing reimprisonments. (See *People v. Frahs*, *supra*, 9 Cal.5th at p. 635 ["The report's reference to cost savings tells us little, if anything, about whether the Legislature intended the statute to apply retroactively. Therefore, we do not regard the mention of cost savings in a legislative report as a clear indication of contrary legislative intent"].) The Attorney General also quotes and attempts to negate *Canedos*'s statement that it is "counterproductive to incarcerate defendants for minor violations of the terms of their probation committed more than two years after the original offense." (*Canedos*, *supra*, 77 Cal.App.5th at p. 479.) The Attorney General disputes that point by arguing that the court thereby substituted its judgments for the Legislature's stated intent, and by arguing that *Canedos*'s rule "would nullify not only probation revocations for 'minor violations' but for major ones as well—like the robbery in *this* case." The first argument is incorrect, as shown by the above-cited passages expressing the legislative intent. The second argument ultimately fails because, as *Canedos* notes, "if

the violation is serious, as in this case, the defendant may be prosecuted for a new crime." (*Canedos*, *supra*, at p. 479.)

In rejecting the latter argument, however, we acknowledge the potential appeal of distinguishing technical from criminal violations of probation. Given the Legislature's intent to reduce reimprisonments resulting from "minor" or "technical" violations of probation, it could have chosen to calibrate the bill's scope by specifying that courts should apply it retroactively, as to misconduct occurring after the modified end date of an existing probationary term, only if the misconduct would amount to a minor or technical violation. But the Legislature did not clearly signal an intent to limit the bill's retroactive effect in that way. *Estrada* does not permit us to read into the bill, for purposes of retroactivity, a distinction between technical and criminal violations that the Legislature itself did not draw.

However, as *Canedos* noted, this is not a significant problem: Applying the usual presumption of retroactivity will not give defendants like Jackson a free pass for criminal misconduct. (*Canedos*, *supra*, 77 Cal.App.5th at p. 479.) While such misconduct no longer can amount to a violation of a probationary term that was modified by Assembly Bill No. 1950 so as to expire before the misconduct occurred, the People still can charge and prosecute the misconduct as a new crime—as they did in *Canedos*, *supra*, 77 Cal.App.5th 469 and in this case.

## DISPOSITION

The order revoking probation and terminating probation as unsuccessful is reversed, and the matter is remanded with directions to enter an order modifying the term of probation imposed on January 18, 2017, to two years, in accordance with Penal Code section 1203.1, subdivision (a) as

12

amended by Assembly Bill No. 1950; reinstating probation; and terminating that probation nunc pro tunc to January 18, 2019.

_____
Fineman, J.[*]


WE CONCUR:


_____
Brown, P. J.


_____
Streeter, J.


A164649


---

[*] Judge of the Superior Court of California, County of San Mateo, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

_People v. Jackson_ (A164649)


Trial Court:             San Mateo County


Trial Judge:             Hon. Elizabeth M. Hill


Attorneys:

        Christopher Stansell for Appellant.


        Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Donna M. Provenzano, Amit Kurlekar and Kelly Anne Styger, Deputy Attorneys General, for Respondent.