Filed 1/8/14  P. v. Corral CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DELILAH DAWN CORRAL,<br><br>    Defendant and Appellant. | H038608<br>(Santa Clara County<br>Super. Ct. No. CC318537)<br><br>**ORDER MODIFYING OPINION**<br><br>**NO CHANGE IN THE JUDGMENT** |

THE COURT:

It is ordered that the opinion filed herein on December 18, 2013, be modified as follows:

1. On page 9, in the last full paragraph before Section II.2, the phrase "violations that occurred after expiration of the original probationary period" is changed to "violations that occurred before expiration of the original probationary period".

2. On page 13, the last full paragraph is replaced with "The judgment is reversed and this matter is remanded to the trial court to adjudicate only those probation violations alleged in the April 28, 2011 Petition for Modification that occurred before the expiration of defendant's original probationary term on October 29, 2009.  Defendant's prior admission as to any violation for which the petition did not allege a specific date shall not be construed as an admission that the violation occurred before October 29, 2009."

There is no change in the judgment.

Defendant's petition for rehearing is denied.

Date: _____
Márquez, J.


_____          _____
Rushing, P.J.                                            Grover, J.

Filed 12/18/13 (unmodified version)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DELILAH DAWN CORRAL,<br><br>    Defendant and Appellant. | H038608<br>(Santa Clara County<br>Super. Ct. No. CC318537) |

Defendant Delilah Dawn Corral pleaded guilty to conspiracy to commit identity theft. (Pen. Code, §§ 530.5, subd (a), 182, subd. (a)(1).)[1] She admitted an enhancement alleging the value of the property taken exceeded $50,000. (§ 12022.6, subd. (a)(1), Stats. 1998, ch. 454, § 2.) On October 29, 2004, the trial court placed defendant on a five-year grant of probation, including 89 days in county jail as a condition of probation. As another condition of probation, the court ordered defendant jointly and severally liable for $50,411.76 in restitution. The court also imposed a restitution fine of $330, and $632.50 in other fees.

In 2007, the trial court revoked defendant's probation for willful failure to make regular payments on the restitution and the restitution fine. Defendant continued to appear in court and made some restitution payments, but the probation department alleged further violations in 2011. After defendant admitted the violations, the court

---

[1] All statutory references are to the Penal Code.

reinstated probation and imposed a nine-month term in county jail as a condition of probation. In 2012, the court also extended the term of probation to 2016 pursuant to section 1203.2, subdivision (a). On appeal, defendant argues the court lacked authority to extend her probation.

After defendant filed her opening brief, the California Supreme Court issued *People v. Leiva* (2013) 56 Cal.4th 498 (*Leiva*), construing the tolling provision of section 1203.2, subdivision (a).[2] Under *Leiva*, the tolling provision preserves the court's authority to adjudicate only those probation violations that occur during the original probationary period. (*Id.* at p. 518.)

Defendant's original probationary term expired October 29, 2009. But several of the violations underlying the trial court's probation reinstatement order occurred in 2011, after expiration of the original probationary period. The dates of the remaining violations were neither alleged nor found. The record thereby shows that the court reinstated probation, at least in part, based on violations that occurred after defendant's original probationary term had expired. *Leiva* now makes clear that a trial court does not have authority to reinstate probation based on post-probationary period violations.[3] Because the court's five-year extension of probation in 2012 was premised on its order of reinstatement, which in turn was based at least in part on a number of probation violations that occurred after defendant's probationary period had expired, we will reverse the judgment and will remand this matter to the trial court with instructions to adjudicate only the alleged probation violations that occurred before October 29, 2009.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A 31-count felony complaint charged defendant and five codefendants with conspiring to steal credit cards, checks, and personal identifying information to purchase

---

[2] We requested supplemental briefing on the effect of *Leiva* in this case.

[3] *Leiva* had not yet been decided when the trial court reinstated defendant's probation.

merchandise and open additional credit card accounts. The record on appeal lacks any facts showing defendant's role as a conspirator in committing identity theft. The probation report states police searched a hotel room occupied by defendant and her boyfriend, codefendant Carlos Chavez. Police found "illegal items such as personal information and possibly some drugs" in the room. Defendant told probation her only connection to the conspiracy "amounted to benefitting from the ongoing criminal activity that Chaves [*sic*] was involved in." Her admitted benefits included receiving "meals and entertainment dates." She denied knowing Chavez was engaged in illegal activity at the time. The probation report described defendant's role in the conspiracy as "undetermined" but stated, "it seems unlikely that the defendant was completely unaware of the illegal activities engaged in by the codefendants."

In 2003, defendant pleaded guilty to conspiracy to commit identity theft and admitted the value of the property taken exceeded $50,000. (Pen. Code, §§ 530.5, subd (a), 182, subd. (a)(1), 12022.6, subd. (a)(1), Stats. 1998, ch. 454, § 2.) On October 29, 2004, the trial court imposed a five-year term of probation, including 89 days in county jail, deemed served, as a condition of probation. The court also ordered restitution payments as a condition of probation and imposed a restitution fine of $330, in addition to $632.50 in other fees. After a restitution hearing, the court ordered defendant jointly and severally liable for $50,411.76 in restitution.

On December 18, 2006, the probation department petitioned for modification of probation based on defendant's willful failure to make regular restitution payments and pay the restitution fine. On February 15, 2007, defendant admitted the violations, and the court revoked probation without imposing a prison term.[4] Over the next four years, defendant regularly appeared in court for repeated hearings designated in the minutes as "sentencing on violation of probation". The minutes show she made payments of $25 to

---

[4] The minutes of the hearing indicate probation "remains revoked" but the record shows no prior revocation, summary or otherwise.

3

$300 on various dates. Minutes of a June 24, 2008 hearing appear to show the court ordered all payments be made only to restitution, instead of fines or fees.

In April 2011, the probation department again petitioned for modification of defendant's probation. The petition alleged eight violations. Four of the violations occurred on or after February 10, 2011. The other four violations—willful failure to pay restitution in full, willful failure to pay fines, failure to submit proof of enrollment in drug counseling, and failure to submit proof of employment—were undated. The petition alleged defendant had paid $1,432 towards restitution, leaving a balance of $48,979.76 outstanding.

On June 2, 2011, defendant admitted the violations. The court reinstated probation, imposed nine months in county jail as a condition of probation, and made defendant eligible for the Regimented Corrections Program. She completed the first phase of the program in county jail on August 17, 2011, whereupon she was released and transitioned to the second phase in community housing.

Defendant appeared before the court again on October 18, 2011, having completed the first two phases of the Regimented Corrections Program. Defendant then entered the third phase of the program, allowing her to seek employment. The court ordered her to make payments of $25 per month.

On January 24, 2012, defendant appeared before the court again for a review hearing. Defendant was current on her restitution payments, but had failed to find employment. The court ordered her to continue monthly payments of $25. The prosecution noted that $48,879 in restitution remained outstanding and expressed dissatisfaction with defendant's efforts. Her codefendants were either in prison or deceased. One codefendant, defendant's deceased relative, had paid $1,265 in restitution as ordered.

Defendant appeared before the court yet again for a review hearing on July 10, 2012. She had been late with some restitution payments, but she was current on the total

4

amount due at $25 per month.  Defendant was working in small, part-time jobs for about $150 per month.  She also received $316 in welfare support for a total monthly income of about $466.  She lived in Section 8 housing and had monthly expenses of about $200.  She supported two children, 8 and 17 years old, but received no child support.  The prosecutor, complaining that defendant's efforts to find employment were "willfully inadequate," argued probation should be revoked.

The court extended defendant's probationary period to June 2, 2016, five years from the prior date of reinstatement.  Defendant argued the extension was too long because she only had a year and a half of her original probationary period remaining.  The prosecutor responded that the court could impose a new five-year period because her original five-year period would have expired in 2009.  The court reaffirmed its order extending probation and ordered restitution payments of $50 per month to be monitored by the probation department.  The prosecutor objected to the order on the ground that without court monitoring, the probation officer would allow the probationary period to expire before defendant had paid the entire amount of restitution outstanding.  The probation department noted that, at the rate defendant was able to make payments, she would remain on calendar "for quite a substantial amount of time."[5]

## II. DISCUSSION

Because this appeal primarily presents an issue of statutory construction, we independently review the trial court's order.  (*In re Corrine W.* (2009) 45 Cal.4th 522, 529.)

In her opening brief, defendant argued the court lacked authority to extend her probationary period because her original five-year probationary period had not yet expired.  Defendant contended the original deadline—October 29, 2009, five years after the court first imposed probation in 2004—was tolled when the court revoked probation

_____

[5] At $50 per month, defendant would require more than 80 years to pay the amount due.

on February 15, 2007. Defendant relied on section 1203.2, subdivision (a), providing "[t]he revocation, summary or otherwise, shall serve to toll the running of the period of supervision."

Section 1203.2, subdivision (e), provides the court with authority to grant a new probation period if "an order setting aside the judgment, the revocation of probation, or both is made *after the expiration of the probationary period. . . .*"[6] (Italics added.) When the court reinstated probation on June 2, 2011, it implicitly set aside the revocation order from February 15, 2007. But defendant argued that since the original expiration date had been tolled, the court did not issue an order setting aside revocation "after the expiration of the probation period," and subdivision (e) therefore did not apply. Subdivision (e) is the only statutory authority for extending probation beyond the initial maximum term. (*People v. Medeiros* (1994) 25 Cal.App.4th 1260, 1267.) Defendant argued that, because subdivision (e) did not apply, the court lacked authority to extend probation.

1. *Application of People v. Leiva*

After defendant filed her opening brief, our high court issued *Leiva, supra,* 56 Cal.4th 498, in which it considered the operation of the tolling provision in section 1203.2, subdivision (a). After the trial court imposed a three-year term of probation in 2000, Leiva was deported to El Salvador and failed to report to the probation department. The trial court, unaware of his circumstances, summarily revoked his probation in 2001. In 2008, Leiva was arrested in the United States and brought before the court for a formal hearing on the probation violation. The prosecution acknowledged it could not prove defendant's failure to report was willful, since he had been deported. Nonetheless, the trial court found Leiva violated probation by failing to report when he reentered the

---

[6] In relevant part, section 1203.2, subdivision (e) provides: "If an order setting aside the judgment, the revocation of probation, or both is made after the expiration of the probationary period, the court may again place the person on probation for that period and with those terms and conditions as it could have done immediately following conviction."

United States in 2007. The trial court reinstated Leiva's probation and ordered it extended until 2011. (*Id.* at p. 503.)

The high court reversed, holding the tolling provision of section 1203.2, subdivision (a), allowed the trial court to adjudicate only probation violations that occurred during the original three-year probationary term. (*Leiva, supra,* at p. 518.) Since Leiva's failure to report in 2007 occurred more than three years after probation was first imposed, the trial court lacked authority to adjudicate that alleged violation. The high court held the tolling provision in section 1203.2, subdivision (a), operates only to "preserve the trial court's jurisdiction to determine whether a defendant violated probation during the court-imposed period of probation. . . ." (*Ibid.*)

Applying *Leiva* here, defendant's argument—that the court lacked authority to extend her probation because her original probationary term had not expired—fails. Under *Leiva*, defendant's probationary period would have expired October 29, 2009; therefore, the trial court had authority to grant a new five-year period of probation under section 1203.2, subdivision (e), assuming the order of reinstatement was valid. Indeed, the *Leiva* court described the operation of subdivision (e) in precisely those terms. "By authorizing the trial court to set aside its order revoking probation and to again place the defendant on probation after expiration of the probationary period, [subdivision (e)] preserved the trial court's authority to hold a hearing after expiration of the probationary term for the purpose of considering a further grant of probation with regard to a violation that occurred *during the probationary period.*" (*Leiva, supra,* at p. 518.) (Italics added.) The only issues left to resolve, then, are whether the reasoning in *Leiva* applies to revocations other than summary revocations and, if so, whether the trial court had adjudicated only violations that occurred during the probationary period.

The procedural history of this case differs from *Leiva* in that defendant's probation was not summarily revoked in her absence; rather, the trial court formally revoked probation following her admission to the alleged violations. The court in *Leiva* did not

7

explicitly discuss the operation of the tolling provision in circumstances other than summary revocation. Much of the court's discussion concerns the consequences of indefinitely extending the conditions of probation when a defendant has no opportunity for a formal revocation hearing. No such concern exists here.

Nonetheless, the Attorney General, relying on *Leiva*, contends defendant's original five-year probationary term expired October 29, 2009. We agree. Nothing in the plain language of the tolling provision distinguishes summary revocation from revocation following a hearing. To the contrary, subdivision (a) provides that "revocation, *summary or otherwise*, shall serve to toll the running of the period of supervision." (Italics added.) This language implies tolling operates uniformly regardless of whether revocation is summary.

The analysis in *Leiva* supports this conclusion. First, the court construed the word "toll" in subdivision (a) to mean "abate" or "stop the running of." (*Leiva, supra,* 56 Cal.4th at p. 509.) The court then observed that if the tolling provision operated to abate the conditions of probation upon summary revocation, the result would be absurd, since summary revocation would release a defendant from compliance. (*Id.* at p. 508.) Because the Legislature could not have intended such an absurd result, the tolling provision could not be construed to abate the conditions of probation. The same logic applies here: it would be absurd if defendant, upon violating probation by her own admission, were then freed from her obligations, particularly since the court imposed no custodial term.

Second, the court considered whether the tolling provision could be construed to *extend* the term of probation without abating a defendant's obligation to adhere to the conditions of probation. The court concluded this construction would conflict with other statutory provisions fixing the maximum length of a probationary term. (*Leiva, supra,* 56 Cal.4th at p. 509.) As relevant here, the court also concluded this construction would conflict with the language of subdivision (e). (*Ibid.*) As defendant concedes, the

8

language of subdivision (e) would make no sense if revocation tolled expiration of the probationary period. The last sentence of subdivision (e) applies only when "an order setting aside the judgment, the revocation of probation, or both is made after the expiration of the probationary period. . . ." If revocation tolled expiration of the probationary period, it would be impossible to issue an order setting aside revocation after expiration because the period—having been tolled—would never expire. This construction, therefore, would result in language that could never apply. "[W]henever possible, significance must be given to every word in pursuing the legislative purpose, and the court should avoid a construction that makes some words surplusage." (*Agnew v. State Bd. of Equalization* (1999) 21 Cal.4th 310, 330.) This analysis applies equally to summary and formal revocation.

Third, the court considered the legislative history of section 1203.2. "Nothing in the legislative history suggests the Legislature intended to permit the trial court to find a violation of probation based on conduct that occurred after the probationary period had expired. Instead, the legislative history reveals that the tolling provision was enacted to preserve the trial court's authority to hold a formal probation violation hearing at a time after probation would have expired with regard to a violation that was alleged to have occurred during the probationary period." (*Leiva, supra,* 56 Cal.4th at pp. 514-515.) Defendant points to nothing in the legislative history to suggest the Legislature intended the tolling provision to operate differently when revocation is other than summary.

We therefore conclude that the trial court had authority to adjudicate only those probation violations that occurred after expiration of the original probationary period on October 29, 2009.

2.    *The Trial Court's Authority to Extend Probation*

Defendant challenges the trial court's extension of her probationary period in 2012. Because the extension to 2016 resulted in a probationary period longer than the five-year statutory maximum, only section 1203.2, subdivision (e) could give the court

9

authority to impose the extension.  (*People v. Medeiros*, *supra,* 25 Cal.App.4th at p. 1267.)  Subdivision (e) only allows for the imposition of a new probationary period "[i]f an order setting aside the judgment, the revocation of probation, or both is made after the expiration of the probationary period. . . ."  There being no order setting aside the judgment, the court could only have relied on an order setting aside the revocation of probation—that is, the court's reinstatement of probation on June 2, 2011.  But if the court lacked authority to reinstate probation in the first place, it could not have relied on such an order to extend it further.  The issue is, therefore, whether the court had authority to reinstate probation in 2011.

As noted above, the trial court could only reinstate defendant's probation based on violations that occurred before expiration of her probationary period on October 29, 2009.  The Attorney General concedes this point, but argues the court must have done so.  The record does not support this claim.

The probation department's petition for modification is dated April 28, 2011, more than 17 months after expiration of the original probationary term.  Defendant made several court appearances and occasional restitution payments on various dates in the interim.  She made her last payment prior to the petition on April 5, 2011.

Of the eight alleged violations, the petition specifies dates for only four:  February 10, February 28, February 28, and March 30, 2011.  The petition lacks dates or time periods for the remaining four violations:  (1) willful failure "to pay victim restitution as ordered *in full*"; (2) willful failure to pay fines and fees; (3) failure to submit proof of enrollment of completion of a substance abuse program; and (4) failure to submit proof of employment, school or vocational training.  (Italics added.)  At the June 2, 2011 hearing, defendant entered a generic admission to "the allegations made in the petition."  Neither she nor the court made any reference to any dates or time periods.  Nor did she admit any specific violation as part of the admission.  The record, therefore, does not show whether

10

the court based its orders on violations occurring solely before expiration of the original probationary term.

The Attorney General contends the large outstanding balance of restitution and fines shows defendant must have been in violation of probation during the probationary period. But the petition alleged defendant *willfully* failed to make these payments. It is possible defendant's failure to make payments during the probationary period resulted from an inability to pay.[7] The record as it stands shows no evidence of a willful violation to make restitution payments during the probationary period.

Generally, we presume trial courts have properly followed the law, absent a showing to the contrary. "It is a basic presumption indulged in by reviewing courts that the trial court is presumed to have known and applied the correct statutory and case law in the exercise of its official duties." (*People v. Mack* (1986) 178 Cal.App.3d 1026, 1032.) But the subsequent change in law presented by *Leiva* requires that we abandon the presumption. Moreover, the record suggests both the court and the parties assumed the expiration of defendant's probationary period had been tolled indefinitely by the revocation. The probation department's petition explicitly alleged four violations to have occurred long after October 29, 2009. The court, just before reinstating probation, asked the probation department "when probation is due to expire?" The probation department responded, "I don't know because you have to look at the toll time. [. . .] I don't know what her toll time would be if her probation is reinstated today." Nobody objected, and nobody expressed any concern with the timing of the alleged violations.

On this basis, we must conclude the record fails to show the court reinstated probation based solely on violations that occurred before the expiration of defendant's

---

[7] As to defendant's failure to pay restitution *in full*, the record raises serious doubt about whether such a failure could have been willful, given the size of the outstanding balance and defendant's financial circumstances. Furthermore, it appears the court ordered all defendant's payments be made only to victim restitution. This raises doubt about the willfulness of her failure to pay the fines and fees.

11

probationary period.  The record therefore also fails to show the court had authority to extend defendant's probation based on a valid reinstatement of probation order.

3.      *Estoppel*

The Attorney General, relying on *People v. Jackson* (2005) 134 Cal.App.4th 929 (*Jackson*), contends defendant is estopped from challenging the extension of her probation because she "acquiesced" in the trial court's order.  In *Jackson*, the defendant pleaded guilty in 1996, at which time the trial court imposed a five-year probationary term.  (*Id*. at p. 931)  Three years later, in 1999, the court summarily revoked the defendant's probation.  After admitting the violation, the defendant asked the trial court to release her from custody and extend her probation five years to 2004.  The trial court did so.  (*Ibid.*)  On appeal, the court acknowledged the trial court lacked authority to extend the defendant's probation beyond the five-year statutory maximum.  But the court held she could not challenge the extension because she did not timely appeal.  In dicta, the court of appeal also noted that the defendant would be estopped from challenging the extension on appeal because she was the one who requested it from the trial court.  "To hold otherwise would permit [the defendant] to trifle with the courts and the probation system by leading the trial court into error, obtaining the benefit of the court's error by avoiding incarceration, and then exploiting on appeal the error she induced the trial court to commit."  (*Id*. at p. 933.)

*Jackson* is inapposite.  Defendant did not request the extension here; the court imposed it on its own initiative.  In fact, defendant argued that the length of the extension would exceed the tolled time remaining on her probationary period.  While counsel did not use the word "objection," her argument had the same effect—it put the prosecutor and the court on notice of the issue at hand.  Indeed, the prosecutor responded with her own argument, claiming the court could impose a new five-year grant of probation "[s]ince we're passed the court date that would have expired. . . ."  In no way can

defendant's response be construed as "leading the trial court into error." (*Jackson, supra,* 134 Cal.App.4th at p. 933.)

Defendant adequately objected to the probation extension at issue here. Furthermore, the issue concerns the trial court's jurisdiction. (See *In re Sheena K.* (2007) 40 Cal.4th 875, 887 [correction on appeal of defect in a probation condition, similar to the correction of an unauthorized sentence on appeal, may ensue from a reviewing court's unwillingness to ignore "correctable legal error".]) Accordingly, we find no waiver or estoppel.

## III. DISPOSITION

The judgment is reversed and this matter is remanded to the trial court to adjudicate only probation violations that occurred before the expiration of defendant's original probationary term on October 29, 2009.

_____

MÁRQUEZ, J.

We concur:

_____

RUSHING, P. J.

_____

GROVER, J.

13