Filed 9/23/24  P. v. Shooter CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br>RYAN WILLIAM SHOOTER,<br><br>    Defendant and Appellant. | A169179<br><br>(Sonoma County Super. Ct. No. SCR-756742-1) |

Defendant Ryan William Shooter raises a single issue in this appeal: whether, after an admitted violation of his probation, the trial court was required to obtain Shooter's consent before modifying his probationary term to account for the time Shooter was in warrant status.  Answering in the negative, we affirm.

## BACKGROUND

On September 1, 2022, the Sonoma County District Attorney's Office filed a complaint charging Shooter with a single felony count of bringing fentanyl into a jail facility in violation of Penal Code[1] section 4573, subdivision (a).

On November 8, 2022, Shooter entered a no contest plea in exchange for two years of formal probation and 180 days in the county jail or release to

_____

[1] All further undesignated statutory references are to the Penal Code.

1

an inpatient drug treatment program "if/when bed space becomes available."[2] The court sentenced Shooter in accordance with the plea agreement on December 6, 2022, meaning Shooter's probation would expire by December 6, 2024. The conditions of probation required Shooter to report to the probation department "within 2 working days of release from treatment" and "obey all laws."

On December 9, 2022, Shooter was released to a treatment facility; he later overdosed and was hospitalized. Shooter "subsequently absconded after being placed at a detox facility." Unable to contact or locate Shooter, the probation officer recommended that "probation be summarily revoked and a no-bail bench warrant be issued."

On February 6, 2023, the court summarily revoked Shooter's probation and issued a bench warrant for his arrest. Shooter was arrested on misdemeanor charges approximately eight months later. At the time of this arrest, Shooter's probation had been summarily revoked for a total of 255 days, and he had been "in active warrant status for 245 days." Shooter's probation officer consequently recommended "that the time spent in summarily revoked status be added to the supervision term," with a new termination date of August 18, 2025. Alternatively, "If the court wishes to extend the probation grant for the warrant period only, the new termination date would be August 8, 2025."

On October 18, 2023, Shooter appeared in person for arraignment on the alleged violation of probation; Shooter was appointed counsel and agreed to admit to his violation and be sentenced consistent with the recommendations of the probation department. Counsel joined in Shooter's

---

[2] Shooter's plea agreement also included a no contest plea to an unrelated case for which he was sentenced concurrently.

2

waiver of constitutional rights and in Shooter's admission.  The court found Shooter's waivers and admission to be knowing, intelligent, and voluntary, and thus found Shooter guilty of violating his probation.  Shooter and his counsel waived time to allow for immediate sentencing, at which point the court revoked and reinstated Shooter's probation "on all the same terms and conditions," with the modification that Shooter serve an additional 90 days in county jail prior to being released to a residential drug treatment program.

The court further indicated an intent to adopt the recommendation of the probation department, "to toll the grant of probation and extend it for the period of time that he was in warrant status."  Shooter objected:  "I think the defense's position -- under AB 19[50] the maximum is two years -- it can't be extended beyond that, so that would be my objection."[3]

The court ultimately adopted the recommendation of the probation department and tolled probation for the period that Shooter was on warrant status, "which is 245 days, with a new termination date of August the 8th, 2025."

Shooter appeals.

## DISCUSSION

As a preliminary matter, Shooter does not, and cannot, challenge his admission to violating the terms of his probation.[4]  Shooter also "concedes"—

---

[3] We interpret Shooter's objection to reference Assembly Bill No. 1950, "which reduced the maximum term of felony probation to two years."  (*People v. Ornelas* (2023) 87 Cal.App.5th 1305, 1313 (*Ornelas*), quoting Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1950 (2019–2020 Reg. Sess.) as amended May 6, 2020, p. 6.)

[4] Shooter did not obtain a certificate of probable cause pursuant to section 1237.5.  As Shooter acknowledges, absent a certificate of probable cause, he cannot attack the validity of his admission of a probation violation.  (*People v. Billetts* (1979) 89 Cal.App.3d 302, 308 ["Absent a certificate of

and we agree—that "the trial court has the authority to extend the term" of Shooter's "probation to account for the 245 days that he was out of contact with probation." As this division recently held, trial courts possess the "discretion to extend probation to account for the time when probation was summarily revoked so long as the total period of probationary supervision does not exceed the statutory maximum" of two years. (*Ornelas*, *supra*, 87 Cal.App.5th at p. 1308, review den. Apr. 12, 2023; § 1203.1, subd. (a); see also *People v. Leiva* (2013) 56 Cal.4th 498, 502 ["we hold that section 1203.2, subdivision (a)'s . . . tolling provision preserves the trial court's authority to adjudicate, in a subsequent formal probation violation hearing, whether the probationer violated probation during, but not after, the court-imposed probationary period"].)

Shooter asserts, however, that the "core issue" is "whether the trial court deprived Mr. Shooter of the choice of whether to consent to this 'adjustment.'" Counsel asserts that Shooter "*should have been* given the opportunity to express his affirmative, informed consent to the court's order extending his probation." (Italics added.) "By depriving Mr. Shooter of the choice of whether to consent to extending his probation," counsel argues that "the trial court negated his long-standing right to consent to the terms and conditions of his supervision." We not only disagree but find counsel's representations misleading.

At the arraignment on Shooter's probation violation, the court began by explaining it had reviewed the probation officer's recommendations and, "[b]ased on the content of this [probation report], the court will summarily revoke probation . . . ." As described above, the probation report

---

probable cause, the issues raised by defendant concerning the validity of his admission of violation of probation, are not reviewable on appeal"].)

4

recommended that the court "modify the termination date to August 18, 2025," to match the time Shooter's probation was in revoked status or, alternatively, modify the termination date to August 8, 2025 "[i]f the court wishes to extend the probation grant for the warrant period only." In the concluding section titled, "Evaluation and Recommendation," the report separately listed probation's complete recommendations: (1) that Shooter serve 90 days in jail, (2) that Shooter "be referred to TASC," a drug treatment program, (3) that Shooter "remain in custody until bedspace becomes available" in the treatment program, and (4) that "the court modify the probation termination date to August 18, 2025."

Shooter's appointed counsel represented on the record that he "did have a chance to review this" probation report with Shooter, expressly acknowledged the first three enumerated recommendations, and then offered, "[Shooter] is prepared to admit to this universal if the court were to follow that." The district attorney also agreed with the recommendations with the caveat that "the People would not be inclined to give another chance at treatment the next time around." The court responded, "So I would be fine following the recommendation" and went on to discuss drug treatment placement options with counsel. The court then repeated that it would "be fine following the recommendation but I want to make sure Mr. Shooter is crystal clear that, if we get to 90 days and he doesn't have treatment lined up, I'm not letting him out. . . ."

At the conclusion of these discussions, the court asked Shooter directly, "You understand that, Mr. Shooter? [¶] . . . [¶] With that in mind, is that what you'd like to do? You'd like to admit the violation today?" To both questions, Shooter responded in the affirmative. The court then advised Shooter of his constitutional rights, asking if he understood and if he wished

to waive those rights so his admission could be taken; Shooter responded, "Yes." The court proceeded to restate the alleged violations of probation and asked Shooter, "Do you admit that to be true?" Shooter responded, "Yes, I do." Shooter's counsel joined in the admission, which the court accepted, finding it to be "knowing, voluntary and intelligent"—which Shooter does not now challenge. After Shooter and his counsel waived time for sentencing, the court ordered terms and conditions consistent with its earlier representations and again stated: "The recommendation is to toll the grant of probation and extend it for the period of time that he was in warrant status." When the court gave defense counsel the opportunity to object, the only objection—which *Ornelas*, *supra*, 87 Cal.App.5th at page 1316 has since clarified and rendered baseless—was "under AB 19[50]" that "the maximum is two years" and probation "can't be extended beyond that."

The record—including the express representation of Shooter's attorney—demonstrates that, before entering his admission, Shooter was fully informed of the probation officer's recommendation to adjust the end date of probation, as well as the court's inclination to adopt that recommendation. Thus, there was no need for the court to have secured Shooter's separate "consent" to that specific term prior to imposing sentence.

Finding no authority on point, Shooter relies on *People v. Bailey* (1983) 140 Cal.App.3d 828 (*Bailey*) to argue that, because "extension of the probationary period is not mandatory, the defendant's affirmative consent *should be required* if the court wishes to extend the term of probation beyond the statutory maximum." (Italics added.) We are not persuaded.

First, the court's adjustment of Shooter's probation termination date to reflect the time he was in warrant status, while discretionary, is not an "extension" of an otherwise authorized probationary term. As confirmed in

6

*Ornelas*, by modifying Shooter's probation "to account for the [245] days in which [Shooter] had been in warrant status and not under the supervision of a probation officer, the trial court did not increase the term beyond the statutory maximum of two years; instead, the court exercised its discretion to adjust the termination date to provide [Shooter] with approximately two years of probationary supervision, as [Shooter] had agreed to when he accepted the terms of probation . . . ." (*Ornelas*, *supra*, 87 Cal.App.5th at p. 1312.)

Second, *Bailey* is inapposite. *Bailey* found "no legal impediment to defendant's knowing and intelligent waiver of the one-year limitation . . . on confinement in the county jail." (*Bailey*, *supra*, 140 Cal.App.3d at pp. 831–832 ["This permits the sentencing court at least to consider whether the defendant merits a grant of probation in those cases where a one-year term of local confinement seems inappropriately brief and a prison commitment unduly harsh"].) But here, neither Shooter nor the court is attempting to waive section 1203.1's two-year limitation on a term of probation or otherwise extend probation beyond the two-year cap. The probation termination date is simply being adjusted to reflect the two-year term of probation originally agreed to by Shooter in connection with his plea agreement for the underlying offense. Under such circumstances, *Ornelas* suggests that further consent is *not* required. (*Ornelas*, *supra*, 87 Cal.App.5th at p. 1309 [affirming the reinstatement and extension of probation " 'over the defense objection' "].)

Seeking remand, Shooter's appellate counsel uses carefully selected words to argue that "[o]nce the issue was raised," referring to the extension of probation, "there is no indication that any off-the-record discussion took place between Mr. Shooter and his counsel . . . ." However, there is no dispute that prior to arraignment, Shooter and his appointed counsel were provided a copy

7

of the probation report, which specifies in two places the recommendation for an adjustment of the term of probation and includes new proposed termination dates. (§ 1203d.) Shooter's counsel represented he "did have a chance to review this with Mr. Shooter," who was "prepared to admit to this universal if the court were to follow that." And, when given the opportunity to object to the probation adjustment, Shooter's only comment was a reference to Assembly Bill No. 1950, a legislative provision that has since been clarified to provide the court with the "discretion to reinstate and extend the probationary term to account for the period of revocation." (*Ornelas, supra,* 87 Cal.App.5th at p. 1313.) No other concern with the recommendations of the probation report was uttered, notwithstanding the court's multiple indications that it would follow the recommendation. Nor did Shooter ever indicate a desire to withdraw his admission after the on-record modification of the probation end date to August 8—the earlier of the two dates recommended. Therefore, to argue on appeal that "the court deprived Mr. Shooter of the opportunity to reject the extension"[5] is not just misleading, it is factually incorrect.

## DISPOSITION

The challenged order is affirmed.

---

[5] Because Shooter had the opportunity and did not "reject the extension," we take no position on whether Shooter had any such right in the first instance.

_____
DESAUTELS, J.

We concur:


_____
STEWART, P.J.


_____
MILLER, J.


*People v. Shooter* (A169179)

9