Filed 12/12/14

**CERTIFIED FOR PUBLICATION**


**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**


| | |
|---|---|
| THE PEOPLE, | |
| Petitioner, | E061117 |
| v. | (Super.Ct.No. CJR1400264) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | OPINION |
| Respondent; | |
| THOMAS ROBERT WARD, | |
| Real Party in Interest. | |


ORIGINAL PROCEEDINGS; petition for writ of mandate/prohibition. J. Robert Gericke, Hearing Officer. (Retired Judge of the San Bernardino Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Petition granted.

Michael A. Ramos, District Attorney, and Eric M. Ferguson, Deputy District Attorney, for Petitioner.

No appearance for Respondent.

Phyllis K. Morris, Public Defender, and Nicole Wirick, Deputy Public Defender, for Real Party in Interest.

Real party in interest Thomas Robert Ward (hereinafter defendant) was convicted of felon/addict in possession of a firearm (Pen. Code, § 29800, subd. (a))[1] in February 2012 and was sentenced to two years in state prison. As a nonviolent offender, following his release from prison on January 10, 2013, he was placed under "community supervision" rather than parole.[2] (§ 3451.)

Pursuant to section 3456, subdivision (a)(1), the period of postrelease community service cannot exceed three years. However, if the offender has been on postrelease supervision for a continuous year "with no violations of his or her conditions of postrelease supervision that result in a *custodial sanction* shall be discharged from supervision within 30 days." (§ 3456, subd. (a)(3), italics added.)

Defendant's performance under community supervision was far from ideal. On March 18, 2014, the probation officer responsible for Ward obtained a summary order revoking supervision and ordering that a hearing be held on numerous allegations that he had violated the conditions of his community supervision. Most serious were allegations that he was frequently intoxicated and also drove while intoxicated. He had also allegedly been found in possession of a fully loaded magazine for a .45-caliber handgun.

---

[1] All subsequent statutory references are to the Penal Code unless otherwise specified.

[2] This provision is part of the Postrelease Community Supervision Act of 2011 (PCSA). (§ 3450.)

2

The violation report also recounted previous violations, two of which had resulted in periods of "flash incarceration" pursuant to section 3454, subdivisions (b) and (c). The recommendation was that Ward be returned to custody and serve 180 days in county jail.

At the hearings on March 20 and 26, 2014, the hearing officer[3] noted that it was more than one year since Ward had been released from prison, and invited discussion on the effect of the "flash incarcerations" Ward had suffered. After hearing argument from both sides, the court concluded that "flash incarceration" was not a "custodial sanction" within the meaning of section 3456, subdivision (a)(3), but was merely a "tool" employed to correct behavior.

The court also expressed concerns about the procedure by which "flash incarceration" had been imposed. Pursuant to section 3454, subdivision (b), the county agency supervising offenders on community supervision may order "flash incarceration" without judicial authorization. Section 3453, subdivision (q), also provides that a person placed on such supervision "shall waive any right to a court hearing prior to the imposition of a period of 'flash incarceration'. . . ." It is not clear whether this waiver is intended to be automatic, or whether the offender must agree as a condition of release; in this case, the supervising authority (the probation department) apparently had a policy of

---

[3] Proceedings analogous to parole revocation hearings may be heard by designated hearing officers appointed by the superior court. (§ 3455; Gov. Code, § 71622.5.)

requiring offenders to sign a so-called "waiver" at the time of a violation. The record contains one such waiver executed by Ward on November 22, 2013.[4]

The court eventually concluded that the waiver was invalid because the offender (Ward) gave up substantial rights without legal advice[5] and through the use of the form, which did not adequately (in the court's view) explain his options and the consequences. It relied on this as another basis for finding Ward free from further supervision, as in the court's view he had not served any valid term of incarceration.

The People sought review and we issued an order to show cause. We now grant the peremptory writ as prayed.

## DISCUSSION

In our view the trial court's initial conclusion that "flash incarceration" is not a "custodial sanction" is untenable. An offender is placed in custody as a sanction for violating the terms of his or her release. Ergo, it is a "custodial sanction." If the language of a statute is unambiguous, the plain meaning controls. (*People v. Leiva* (2013) 56 Cal.4th 498, 506.) However, before further explaining our reasoning we must deal with defendant's argument not going to the merits.

---

[4] The contents of this waiver form are briefly discussed below.

[5] This assumes that the "waiver" stated in section 3453, subdivision (q), is not automatic.

Defendant first argues that writ review is inappropriate, making the assertion that, "Yet, the People have not sought appellate review and thus the issue cannot be ripe for review via extraordinary writ." If this is meant as an argument that the People should be relegated to appeal, our issuance of the order to show cause operated as a finding that delay would be prejudicial in this case. (See *People v. Superior Court* (*Sanchez*) (2014) 223 Cal.App.4th 567, 572.) The public safety issues involved with Ward's early release from supervision, added to the public interest in resolving the issue, justify our intervention at this stage. Nor do we see that writ review interferes with defendant's due process rights.[6]

The next argument appears to be that the People may not appeal because the postjudgment order does not affect a substantial right within the meaning of section 1238, subdivision (a)(5). Ward argues that no substantial right of the People was violated because section 3456, subdivision (a)(2), allowed him to be considered for early release from supervision after a period of only six months. But the fact that a model offender could be approved for early release from supervision after six months has no bearing whatsoever on the issue of whether the People's rights are substantially affected by the premature release of an offender who has shown no ability or inclination to conform to his/her conditions. We also note that the petition raises an important issue of statutory construction that could not be resolved if no review was available—another

_____

[6] Nothing in this opinion affects Ward's right to a full hearing on the alleged violations.

justification for extraordinary relief. (See *People v. Superior Court* (*Brodie*) (1975) 48 Cal.App.3d 195, 199-201.)

Defendant also asserts that because the People have no control over the length of time a *parolee* spends on parole, the People should therefore not be able to complain about the early termination of community supervision. It is true that whether to grant an inmate early release from parole was previously solely within the jurisdiction of the Department of Corrections and Rehabilitation as an executive function.[7] Following the enactment of the Public Safety Realignment Act of 2011 (Realignment Act), Assembly Bill 109, such determinations have been shifted to the courts. (§ 3001, as amended by Stats. 2011, ch. 15, § 472.) While we express no view on the issue of whether such routine determinations are reviewable, where the Legislature has given the court the power to adjudicate violation issues, the People must have the right to seek our assistance if the trial court incorrectly refuses to exercise its jurisdiction to do so. Here, the court's view of the "custodial sanction" led it to believe it could not hear the violation allegations, and it is that decision that we review.

It is not the question whether "flash incarceration" is being used "interchangeably" with "custodial sanction," as defendant asserts. Under the PCSA the supervising officer may also request, and the court may impose, up to 180 days in jail, and this is

---

[7] Former section 3001 provided for automatic discharge from parole after specified periods unless the Department of Corrections and Rehabilitation recommended retention on parole to the Board of Prison Terms and the Board so determined. The current version of the statute shifts the retention determination to the court.

specifically described as a "custodial sanction."  (§ 3455, subd. (d).)[8]  But section 3454,

subdivision (b), also explains that "[s]horter, but if necessary more frequent, periods of

detention for violations of an offender's postrelease supervision conditions shall

appropriately punish an offender while preventing the disruption in a work or home

establishment that typically arises from longer term revocations."  Thus, it is clear that

the Legislature did not think of flash incarceration as different from custody served after

a court-ordered revocation; it is simply different in degree but serves the same purpose.

We find that there is nothing ambiguous about "custodial sanction," and that it applies

equally to formal revocation terms and flash incarceration, as confirmed by the

acknowledgement that the two serve the same purpose.

Again correctly noting that court-imposed lengthy returns to custody are expressly

described as a "custodial sanction" in section 3455, subdivision (d), as discussed above,

defendant argues that "flash incarceration" is "separately defined" in section 3454,

subdivision (c), as a "tool" rather than a "custodial sanction."[9]  In this context "tool" is

not a *definition* of "flash incarceration," but merely reflects its role as a means of

accomplishing an end.  Defendant cites to section 3450, subdivision (b)(8), which lists

---

[8]  "Confinement pursuant to paragraphs (1) and (2) of subdivision (a) shall not exceed a period of 180 days in the county jail for each custodial sanction."

[9]  "Flash incarceration is a tool that may be used by each county agency responsible for post release supervision."

7

flash incarceration, along with other permissible means of encouragement.[10] That subdivision defines "[c]ommunity-based *punishment*" (italics added) as encompassing "a range of *custodial* and noncustodial responses" (italics added) and describes all of these tools as "[i]ntermediate *sanctions*." (Italics added.) Hence, "flash incarceration," which involves a return to custody and is defined as a sanction, is a "custodial sanction."

Defendant also argues that the hearing officer's ruling "does not thwart the goals of realignment." He merely argues about the goals of realignment and improving public safety, but once again without addressing the critical points. Where an offender's conduct has reached the level of impelling the supervising officer to put him or her in jail, that offender is presumptively unprepared for release from supervision. The same is not true of an offender who is required to do community service or participate in a mother-infant program, to cite two other "intermediate sanctions." As defendant notes, section 3456, subdivision (a), allows persons under community supervision to be considered for termination in as little as six months if they have not suffered a "custodial sanction." Under his approach, an offender who had been returned to custody for flash incarceration two, three, four or even more times would still be eligible to seek termination. As we discussed above, the Legislature approved flash incarceration not only for its perceived efficacy, but also to ameliorate the negative effects incarceration can have on an offender's successful return to free society. (§ 3454, subd. (b).) It would

---

**10** Among the other tools listed are community service, drug testing, home detention, and day reporting.

be further anomalous if the supervising officer's leniency in this respect were to have the result that the offender could not be kept under supervision, even though an offender who had committed identical violations but who was returned to court for adjudication could be retained on supervision.

And since the term "custodial sanction" is not ambiguous, we need not discuss the rule of lenity. (See *People v. Canty* (2004) 32 Cal.4th 1266, 1277.)

We now turn to defendant's final approach, one also accepted by the trial court— that the "waiver" practice deprived him of due process, and the flash incarcerations, being invalid, cannot serve to extend his period of supervision. Again, it permits an offender who was given the lesser punishment of a relatively brief flash incarceration to use that lenience as a means of avoiding continued supervision.

To begin with, we agree with the People that defendant is incorrect in discussing the circumstances under which supervision may be extended. The base period is three years. (§ 3456, subd. (a).) Although, as defendant argues, the court is given the power to terminate (or modify, or revoke) supervision (§ 3455, subd. (a)(2)), the context is that of its determination of a *revocation petition.* (See also § 3456, subd. (a)(6), providing for discharge if "[j]urisdiction is terminated by the revocation hearing officer upon a petition to revoke and terminate supervision by the supervising county agency.") Otherwise, it is the county supervising agency which determines whether the conditions for early termination are met. (§ 3456, subd. (a).) Section 3455 is *not* a mechanism that the supervising agency must use to "extend" the "one-year period" of supervision; it deals

with violations that the supervising officer elects to present to the court for more severe custodial punishment than is available without judicial intervention.

The fact that by imposing a flash incarceration a supervising officer can in effect ensure that the offender will remain under supervision past the one-year point is simply a consequence of the legislative scheme. As we have noted above, the language of the statutes suggest that an offender released on community supervision waives his right to contest flash incarceration. It is commonplace for offenders to be required to give up constitutional rights in order to obtain a conditional release—for example, to consent to warrantless searches. (See § 3053; *People v. Hunter* (2006) 140 Cal.App.4th 1147, 1152.)

Parole agents and supervising officers have the power to arrest or procure the warrantless arrest of a parolee or offender under community supervision. (See §§ 3000.08, subd. (d), 3455, subd. (b).) Given the routine delays involved in bringing the matter to the court or parole board for resolution, the Legislature could logically find that authorizing flash incarceration represented no significant comparative infringement on the offenders' rights.[11] And although the People argue that the written waiver is unnecessary because the right to a hearing is statutorily waived, we are not at all convinced that it was inadequate if it *was* necessary. It clearly informed Ward that the

_____

[11] Defendant expressly disclaims any intent to argue that "a flash incarceration by its very nature is unconstitutional as it deprives someone of their liberty while simultaneously denying them the right to a hearing on the merits." We therefore do not resolve this issue.

10

flash incarceration would count as a custodial sanction and that if he wished to contest it, a formal revocation petition would be filed with the court. We are not persuaded that counsel was required to be appointed before this decision was made.[12]

Furthermore, the record before this court, and the trial court, contains only the written waiver signed by Ward. There was no testimony either from Ward or the supervising officer concerning the circumstances surrounding Ward's execution of the waiver, or what additional advisals or information may have been orally provided. It was therefore error for the trial court to determine, on this record, that the flash incarceration was imposed without due process.

We also note that if the person under supervision is not allowed to waive (either as a matter of law or expressly) any right to a hearing before a flash incarceration is ordered, and if such incarcerations are not considered custodial sanctions, the consequences would be clearly inimical to the purposes of the PCSA. As we have discussed, flash incarceration is designed to be a swifter, but milder and less disabling sanction than a return to court with its potential term of many months. It is also clearly designed to relieve the courts of the burden of having to adjudicate and punish minor violations. On the other hand, if "flash incarceration" does not count as a "custodial sanction," supervising officers will be forced to use the formal court process in order to prevent the

---

[12] We note that when *parole* is revoked, whether counsel must be appointed is evaluated on a case-by-case basis (§ 3044, subd. (a)(3)) and nothing prohibits the parolee from waiving his right to a hearing (Cal. Code Regs., tit. 15, § 2645.), admitting the charges, and agreeing to a return to custody.

period of supervision from automatically, and undesirably, expiring. This would inevitably result in longer periods of incarceration, especially given the time necessary to schedule and complete court hearings.

For all these reasons we conclude that Ward had suffered a lawful "custodial sanction" within the meaning of section 3456, subdivision (a)(3), and he remained under supervision when the violation report at issue was filed.[13]

## DISPOSITION

Let a peremptory writ of mandate issue directing the Superior Court of San Bernardino County to vacate its order dismissing violation proceedings, and to resume and complete such proceedings.

---

[13] Ward's last argument is that it would be unfair to return him to supervision after several months when he has been "free to conduct himself without the burden of supervision," citing *People v. Tanner* (1979) 24 Cal.3d 514 (*Tanner*). *Tanner* was the "use a gun, go to prison" case (*id*. at p. 545, fn. 4) in which the majority opinion held that trial courts had no discretion to strike a firearm use finding and thereafter place a defendant on probation. (*Id.* at p. 521.) But because the facts of the case would have fully authorized a grant of probation had it been legally possible, and because the proper application of the statutes had been in great doubt, the majority found that it would be "unfair" and "unjust" to require the defendant, who had apparently completed probation, to serve the prison term. (*Id.* at pp. 521-522.)

*Tanner* does not control. His release from supervision was the result of simple judicial error in construing an unambiguous statute. The defendant in *Tanner* was no real risk to the public; defendant here is.

12

Petitioner is directed to prepare and have the peremptory writ of mandate issued, copies served, and the original filed with the clerk of this court, together with proof of service on all parties.

**CERTIFIED FOR PUBLICATION**


MILLER
                                                                                              J.

We concur:


RAMIREZ
                    P. J.


RICHLI
                    J.