Filed 12/30/25  P. v. Woodall CA6

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>AARON ZEIGLER WOODALL,<br><br>    Defendant and Appellant. | H051584<br>(Monterey County<br> Super. Ct. No. 22CR007736) |

A jury convicted Aaron Zeigler Woodall of two counts of possessing drugs for sale, and Woodall was sentenced to a three-year split sentence of 18 months in county jail and 18 months under mandatory supervision.  On appeal, Woodall seeks to challenge three conditions imposed on the mandatory supervision.  However, Woodall did not challenge these conditions in the trial court, and as a general rule appellants forfeits any challenge not raised first in the trial court.  Although Woodall argues that several exceptions to this rule apply, as explained below, these arguments are unpersuasive.  Woodall's claims of ineffective assistance of counsel are likewise unpersuasive.  As a consequence, we reject Woodall's challenges to the mandatory supervision conditions imposed by the trial court and affirm the judgment.

# I. BACKGROUND

## A. The Underlying Offenses

In August 2022, police officers stopped a car in which Woodall was riding. For reasons not apparent in the record, the officers decided to arrest Woodall and conducted a search incident to arrest. On Woodall, officers found a plastic bag containing smaller baggies with over 11 grams of heroin, over a gram of cocaine, 15 grams of methamphetamine, and three grams of fentanyl. Woodall also had $1,700 in cash and a piece of paper with multiple names next to "number amounts," which the police believed to be a "pay-owe sheet" to keep track of drug sales, in part because there was a slang reference to fentanyl pills, or "blues." In the car, police found nearly one additional gram of heroin, and in a backpack that Woodall identified as his, officers found a cell phone and a small scale with apparent drug residue. A second cell phone was found on the passenger seat where Woodall had been riding.

## B. Charges and Trial

Woodall was charged with one count of possessing heroin and cocaine for sale in violation of Health and Safety Code section 11351 and one count of possessing methamphetamine for sale in violation of Health and Safety Code section 11378. The amended information also alleged that Woodall demonstrated planning, sophistication, and professionalism in committing these offenses and that Woodall had prior convictions of increasing seriousness.

Woodall went to trial in September 2023. The prosecutor presented testimony from the officers who arrested Woodall and discovered the drugs and related paraphernalia. A criminalist testified about tests identifying the drugs found on Woodall and their quantity. Finally, the prosecutor presented testimony from an expert in drug sales who opined that Woodall possessed the drugs in this case for sale. In support of this opinion, the expert noted the large quantities found, which were inconsistent with personal use, and the scales. The expert also testified that the two phones suggested drug

2

dealing, because drug dealers often have a "clean phone" to talk with family and friends, and a "dirty phone" or "burner phone" for drug sales. Woodall presented no evidence in his defense. The jury found him guilty on both counts of possession for sale.

**C. Sentencing**

On October 17, 2023, the trial court imposed a three-year term on the first count and a concurrent two-year term on the second. The court also split the sentence into 18 months in custody and 18 months of mandatory supervision.

The trial court also discussed the conditions of the mandatory supervision, which were based on conditions proposed by the probation officer. One of the conditions concerned medication: "Take all psychotropic medication in the manner and dosage prescribed by your health care professional." Another condition subjected Woodall's electronic devices to search: "Submit all electronic devices under your control to a search by the Probation Office or a peace officer, of any text messages, voicemail messages, call logs, photographs, email accounts, and social media accounts, with or without reasonable or probable cause or the benefit of a search warrant . . . ." Finally, a condition imposed "flash incarceration": Under this condition, "[t]he Defendant agrees to waive the right to a court hearing and accept a period of up to 10 days of flash incarceration imposed by the probation officer for any violation of the conditions of probation. If the Defendant does not agree to accept a recommended period of Flash Incarceration, the probation officer is authorized to address the violation by filing a declaration of revocation with the court."

Before discussing the mandatory supervision conditions, the trial court asked defense counsel whether he had reviewed the conditions of supervision with Woodall, and when counsel said that he had, the trial court confirmed this with Woodall. Finally, after discussing the flash incarceration condition, the trial court told Woodall, "I need you to get clean and sober, and I need you to stay clean and sober. All right?" Woodall replied, "Yes, sir."

Woodall did not object to any of the conditions imposed on supervision.

Woodall subsequently filed a timely notice of appeal.

## II. Discussion

Woodall challenges the medication, search, and flash incarceration conditions on his mandatory supervision. Woodall argues that these conditions are invalid as well as unconstitutionally vague and overbroad. Because Woodall did not raise these objections in the trial court, they have been forfeited.

### A. The Flash Incarceration Condition

We begin with the flash incarceration condition. Under this condition, "[t]he Defendant agrees to waive the right to a court hearing and accept a period of up to 10 days of flash incarceration imposed by the probation officer for any violation of the conditions of probation." The Penal Code authorizes courts to impose such flash incarceration "if . . . the court obtains from the defendant a waiver to a court hearing prior to the imposition of a period of flash incarceration." (Pen. Code, § 1203.35, subd. (a)(1); see also *People v. Superior Court (Ward)* 232 Cal.App.4th 345, 353 ["[F]lash incarceration is designed to be a swifter, but milder and less disabling sanction than a return to court with its potential term of many months."].) Woodall argues that he did not provide the required waiver for flash incarceration. The People respond that Woodall forfeited this argument by failing to object to the flash incarceration condition at sentencing. We agree.

The probation report recommended that flash incarceration be one of the conditions on mandatory supervision, and at sentencing the trial court asked whether defense counsel had gone over the conditions of supervision with defendant, which both defendant and counsel confirmed that counsel had. The trial court then went over the conditions of supervision, including flash incarceration. With respect to flash incarceration, the trial court explained to Woodall that this condition "requires you to waive your right to a court hearing except to create up to ten days of flash incarceration,"

4

which means that, "if you make a mistake and run to Probation and say you made a mistake, . . . they can impose their own punishment up to 10 days"—which, the court observed, was likely to be more lenient than the penalty it would impose. Finally, the court added, "I need you to get clean and sober, and I need you to stay clean and sober. All right?" Woodall responded, "Yes, sir."

Woodall contends that, when he responded "[y]es sir," he was confirming that he would get clean and sober rather than agreeing to flash incarceration. This is not clear from the trial transcript. However, we need not resolve this ambiguity because at the sentencing hearing Woodall did not object to the flash incarceration condition. As a general rule, a defendant "must preserve claims of trial error by contemporaneous objection as a prerequisite for raising them on appeal." (*People v. Trujillo* (2015) 60 Cal.4th 850, 856 (*Trujillo*).) Otherwise, any right asserted is forfeited by the failure to timely assert it. (*Ibid.*) Moreover, " 'the forfeiture rule applies in the context of sentencing' " (*ibid.*), and, indeed, has been applied to probation conditions (*People v. Welch* (1993) 5 Cal.4th 228, 235 (*Welch*)). As the Supreme Court has explained, "[a] timely objection allows the court to modify or delete an allegedly unreasonable condition or to explain why it is necessary in the particular case." (*Ibid.*) The forfeiture rule applies here, and bars Woodall's objection to the flash incarceration condition, because Woodall failed to object in the trial court that he had not waived his right to a court hearing, which deprived the court of the opportunity to remedy the alleged omission.

Although Woodall does not dispute that he failed to object to the flash incarceration condition in the trial court, he contends that his objection was not forfeited because the objection concerns the condition's validity and, alternatively, because it raises a pure question of law. In fact, the validity of a sentencing condition may be challenged for the first time on appeal only if the challenge raises a "pure question of law that can be resolved without reference to the particular sentencing record developed in the trial court." (*Welch*, *supra*, 5 Cal.4th at p. 235.) Moreover, Woodall's objection does

5

not raise a pure question of law. To the contrary, to determine whether Woodall waived his right to a court hearing, the sentencing record must be referenced, and it must be determined to what Woodall agreed at the end of the trial court's discussion of flash incarceration, when the court told Woodall to stay clean and sober.

In addition, it is not clear what Woodall meant. Woodall contends that he merely confirmed that he understood that he was required to stay sober and drug-free. That is a reasonable reading of the sentencing hearing. However, the court observed that Woodall needed to stay sober after discussing the flash incarceration condition and before discussing the final condition on supervision. As a consequence, it is also reasonable to interpret the court's comment about staying sober as a component of its discussion of the flash incarceration condition and Woodall's response as consent to that condition. Moreover, this conclusion is bolstered by Woodall's earlier confirmation that he had gone over the conditions of supervision with his counsel, and his failure to object to the flash incarceration condition at sentencing. If Woodall had objected at trial that he did not waive his right to a court hearing, the trial court could have dispelled this ambiguity. As a consequence, this is exactly the sort of objection that the forfeiture rule is intended to bar. (See *People v. Potts* (2019) 6 Cal.5th 1012, 1036; *People v. Pearson* (2013) 56 Cal.4th 393, 431; *Welch, supra*, 5 Cal.4th at p. 235.)

Woodall also contends that the forfeiture rule does not apply to his objection to the flash incarceration condition because the objection concerns a significant right. It is true that the forfeiture rule does not apply to the waiver of core constitutional rights such as the right to counsel, the right to appeal, and the rights relinquished by a guilty plea. (*Trujillo, supra*, 60 Cal.4th at p. 859.) However, the forfeiture here does not involve such rights. Although the flash incarceration condition required Woodall to waive the right to a court hearing, the condition did not require him to accept the flash incarceration imposed by the probation officer. To the contrary, in keeping with the statute authorizing flash incarceration (Pen. Code, § 1203.35, subd. (a)(5)), the condition provided that, if

6

Woodall does not accept a recommended period of flash incarceration, "the probation officer is authorized to address the violation by filing a declaration of revocation with the court." Thus, the flash incarceration condition does not subject Woodall to incarceration on the probation officer's order without a court hearing unless Woodall consents to that incarceration. Woodall does not explain how subjecting him to flash incarceration with his consent or acquiescence implicates a constitutional right so significant that it is not subject to forfeiture.

We therefore conclude that Woodall's challenge to the flash incarceration condition has been forfeited.

## B. The Medication Condition

In addition to the flash incarceration condition, the trial court imposed a condition requiring Woodall to "[t]ake all psychotropic medications in the manner and dosage prescribed by your health care professional." Woodall argues that this medication condition is unconstitutionally vague and overbroad as well as invalid. Because these arguments were not raised below, they also have been forfeited.

### 1. Vagueness

A probation or supervision condition is unconstitutionally vague if it forbids or requires an act in terms so vague that ordinarily intelligent people must guess at the provision's meaning. (*In re Sheena K.* (2007) 40 Cal.4th 875, 890 (*Sheena K.*).) Vagueness challenges are subject to the forfeiture rule, and therefore such challenges generally cannot be raised on appeal unless they were raised in the trial court. (*Id*. at pp. 886-887.) Here, Woodall did not argue in the trial court that the medication condition was vague, and therefore the argument has been forfeited.

Woodall does not dispute that he failed to assert his vagueness challenge in the trial court. Instead, he contends that the forfeiture rule does not apply because he is challenging the vagueness of the medication condition on its face, and this challenge raises a pure issue of law. Woodall is correct that a facial challenge presenting "a pure

question of law" is not subject to the forfeiture rule and can be reviewed even if it was not asserted in the trial court. (*Sheena K., supra*, 40 Cal.4th at p. 888.) However, a facial challenge requires a party to establish that a provision is unconstitutional " 'in the generality or great majority of cases.' " (*Guardianship of Ann S.* (2009) 45 Cal.4th 1110, 1126, italics omitted.) Woodall has not attempted to do so. Although Woodall asserts that "it is unclear from the phrase 'psychotropic medications' what medications appellant [Woodall] must take," he does not argue that the phrase is inherently ambiguous. Indeed, Woodall fails to explain how the phrase creates ambiguity concerning any particular drug, much less in the generality or great majority of cases. In addition, Woodall's arguments that the "otherwise clear language can become ambiguous in the context in which it is used" and that "[h]ere, there is no evidence that appellant had ever resisted, declined, or forgotten to take prescribed psychotropic medication" concern the facts of this case and thus raise as-applied, not facial, challenges.

We therefore conclude that the forfeiture rule applies to Woodall's vagueness challenge and that this challenge is barred because it was not asserted in the trial court.

### 2. *Overbreadth*

In addition to arguing that the medication condition is unconstitutionally vague Woodall argues that the condition is unconstitutionally overbroad. However, Woodall did not raise this objection in the trial court, and therefore he has forfeited it. (*Sheena K., supra*, 40 Cal.4th at pp. 886-887.)

Here again, rather than dispute whether that he raised the challenge in the trial court, Woodall asserts that his overbreadth challenge is not subject to the forfeiture rule because he argues that the medication condition is overbroad on its face. However, Woodall does not argue that the medication condition is unconstitutional in the generality or great majority of cases. To the contrary, Woodall contends the condition is overbroad because it "is not narrowly tailored to an identifiable medical problem related to his offense or rehabilitation for which medication might be appropriate and necessary." This

argument is focused on the application of the medication condition in this case and thus is an as-applied, not a facial, challenge. (See, e.g., *Toby v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 ["An as applied challenge . . . contemplates analysis of the facts of a particular case or cases to determine the circumstance in which the statute has been applied and to consider whether in those particular circumstances the application deprived the individual of a protected right."].)

We therefore conclude that Woodall's overbreadth challenge to the medication condition has been forfeited.

### 3. Invalidity

Woodall also contends that the medication condition is invalid because it bears no relationship to the offenses for which he was convicted and is not reasonably related to future criminality. Woodall did not raise this argument in the trial court, and he does not argue that any exception to the forfeiture rule applies. As a consequence, his invalidity argument also has been forfeited.

### 4. Ineffective Assistance of Counsel

Woodall argues that, if his challenges to the medication condition were not raised in the trial court, his trial counsel provided ineffective assistance of counsel. We are not persuaded.

To prevail on a claim of ineffective assistance of counsel, a defendant must establish two things: (1) counsel's performance was deficient and (2) this deficient performance prejudiced the defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) A counsel's performance is deficient if it "fell below an objective standard of reasonableness" under prevailing professional norms. (*Id*. at p. 688.) However, judicial review of counsel's performance is "highly deferential," and courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (*Id*. at p. 689; see *People v. Weaver* (2001) 26 Cal.4th 876, 925.)

9

In addition, the burden of a defendant claiming ineffective assistance of counsel is especially " 'difficult to carry on direct appeal.' " (*People v. Mickel* (2016) 2 Cal.5th 181, 198.) "On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation." (*People v. Mai* (2013) 57 Cal.4th 986, 1009 (*Mai*).) Absent these circumstances, ineffective assistance of counsel claims are "more appropriately resolved in a habeas corpus proceeding." (*Ibid.*)

Woodall has not shown that he received ineffective assistance of counsel because his counsel failed to argue that the medication condition was unconstitutionally vague. As noted above, a condition is unconstitutionally vague if persons " ' " 'of common intelligence must necessarily guess at its meaning and differ as to its application.' " ' " (*Sheena K.*, *supra*, 40 Cal.4th at p. 890; see also *People v. Holzmann* (2018) 18 Cal.App.5th 1241, 1244 ["Probation conditions, like statutes, are unconstitutional if they are not sufficiently precise for the probationer to know what is required of him or her."].) Far from demonstrating that persons of common intelligence frequently may disagree over how the phrase "psychotropic medication" applies, Woodall has not identified a single instance in which the phrase creates confusion or confusion. Consequently, trial counsel reasonably could have concluded that a vagueness challenge to the phrase would fail and chosen not to raise one. (See *People v. Penunuri* (2018) 5 Cal.5th 126, 166; see also *People v. Anderson* (2001) 25 Cal.4th 543, 587 ["Counsel is not required to proffer futile objections."].) Alternatively, trial counsel might have concluded that a successful vagueness challenge would result in only a minor modification to the condition that would provide no practical benefit to Woodall. Consequently, especially in light of the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, we are not persuaded that trial counsel was deficient in not raising a vagueness challenge.

Similarly, Woodall has not shown that trial counsel was deficient in failing to raise an overbreadth challenge. "The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights . . . ." (*People v. Stapleton* (2017) 9 Cal.App.5th 989, 993.) Although Woodall contends that "the record fails to show that the broad infringement of [his] constitutional right to privacy is reasonably necessary to achieve some medical purpose related to his offense or rehabilitative needs," Woodall admitted that he had severe post-traumatic stress disorder for which he was taking medication, and trial counsel may have had evidence linking Woodall's psychological issues and their treatment with the possession of drugs for which he was convicted or with his ability to avoid illegal conduct in the future. Indeed, there was testimony at trial that some addicts sell drugs to sustain their habits, and Woodall admitted that he self-medicated with alcohol and illicit drugs "when he does not want to think about stuff." Accordingly, at least on direct appeal, we cannot conclude that trial counsel's decision not to raise an overbreadth challenge lacked a rational explanation. (See *Mai*, *supra*, 57 Cal.4th at p. 1009.)

For the same reason, we cannot conclude that there is no rational explanation for trial counsel's failure to challenge the validity of the medication condition. A probation or supervision condition is invalid if "it '(1) it has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality.' " (*People v. Lent* (1975) 15 Cal.3d 481, 486, superseded by constitutional amendment on other grounds as stated in *People v. Moran* (2016) 1 Cal.5th 398, 403, fn. 6.) As noted above, trial counsel may have had evidence linking Woodall's ability to avoid illegal conduct in the future to his psychological issues and their treatment, and making the medication condition reasonably related to future criminality.

Accordingly, based on the limited record available on direct appeal, we conclude that Woodall has failed to show that his trial counsel supplied ineffective assistance of counsel in not challenging the medication condition, and we therefore reject Woodall's challenge to that condition.

## C. **The Electronic Search Condition**

Finally, Woodall challenges the electronic search condition imposed on his mandatory supervision. This condition requires Woodall to "[s]ubmit all electronic devices under your control to a search . . . of any text messages, voicemail messages, call logs, photographs, email accounts, and social media counts" without probable cause and at any time. Woodall argues that this search condition is overbroad and invalid. Woodall did not raise these challenges at sentencing and therefore those challenges have been forfeited. (*Sheena K.*, *supra*, 40 Cal.4th at pp. 886-887.)

Here again, Woodall argues that he has raised a facial challenge not subject to the forfeiture rule. We are not persuaded. Overbreadth challenges to search conditions similar to the one here have been rejected (see, e.g., *People v. Salvador* (2022) 83 Cal.App.5th 57, 64-65), and far from suggesting that this precedent is erroneous, Woodall argues that it is distinguishable on its facts. Even more important, Woodall does not argue that electronic search conditions are overbroad in the generality or great majority of cases. Instead, he argues that the search condition imposed on him is not narrowly tailored because nothing in his social or criminal history suggests that he is likely to use electronic devices for criminal purposes. This is an as-applied, not a facial, challenge and thus subject to the forfeiture rule.

Woodall also argues that his trial counsel rendered ineffective assistance of counsel by not challenging the electronic search condition. Although, as noted above, Woodall contends that nothing in his history suggests that he is likely to use electronic devices for criminal purposes, the prosecutor presented evidence that Woodall was found with two cellphones and that drug dealers often have a "clean phone" to talk with family

12

and friends, and a "dirty phone" or "burner phone" for drug sales. Moreover, trial counsel may have had additional information concerning Woodall's use of phones to facilitate drug dealing. Consequently, trial counsel may have had strong reasons for not raising an overbreadth challenge to the electronic search condition, and we cannot say on direct appeal that counsel had no rational reason for not challenging the electronic search condition as overbroad. (See *Mai*, *supra*, 57 Cal.4th at p. 1009.)

Accordingly, we conclude that Woodall's challenge to the electronic search condition has been forfeited and that at this stage his ineffective assistance of counsel claim fails.

### III. DISPOSITION

The judgment is affirmed.

_____

BROMBERG, J.

WE CONCUR:

_____

GREENWOOD, P. J.

_____

DANNER, J.

*People v. Woodall*
H051584